## St. Paul Fire & Marine Ins. Co. *v.* McQuaid.

[75 South. 255, Division B.]

1. REFORMATION OF INSTRUMENTS. *Fire insurance policy. Change in beneficiary. Evidence. Sufficiency.*

   In this action to reform a fire insurance policy the court held that the evidence as set out in the opinion of the court was not sufficient to show that the insurance company or any agent authorized to act for it made any agreement to transfer the insurance, or had any notice of a request to do so.

2. EVIDENCE. *Conversations over telephone. Admissibility.*

   It is well settled that conversations over a telephone are admissible in evidence. The fact that the voice at the telephone is not

identfied does not render the conversation inadmissible. The weight to be given to such evidence is largely left to the jury or to the chancellor, when the case is tried before him.

3. REFORMATION OF INSTRUMENTS. *Mistake. Evidence. Sufficiency.*
Reformation of an agreement, sought by reason of an alleged mistake in drawing it up, can only be had upon proof, clear and free from doubt.

4. REFORMATION OF INSTRUMENTS. *Mistake in beneficiary. Defense.*
Where in a suit to reform a fire insurance policy, plaintiff testified that she requested over the telephone a change in the beneficiary, it was incumbent upon the defendant to show with reasonable certainty that such message was not taken or received by any employee of the company authorized to receive and pass it along.

APPEAL from the chancery court of Hinds county.
HON. O. B. TAYLOR, Chancellor.

Suit by Edward F. McQuaid against the St. Paul Fire & Marine Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLaurin & Armistead,* for appellant.

In the case of *Thompson* v. *Phoenix Insurance Co.,* 136 U. S. 195, at the bottom of page 296 the court lays down the rule as to what must be shown to entitle a person to the reformation of a written instrument. On page 296 the court said:

"We have before us a contract from which, by mistake, material stipulations have been omitted, whereby the true intent and meaning of the parties are not fully or accurately expressed. A definite, concluded agreement as to matters, which, in point of time, precede the preparation and delivery of the policy, is established by legal and exact evidence which removes all doubt as to the understanding of the parties."

The above quotation states the test by which the right to reform an instrument must be shown; that is, that before a party is entitled to reform a written instrument, he must show that there was a definite con-

cluded agreement as to matters, which, in point of time, precede the preparation and delivery of the policy —and it cannot stop at this—these facts must be shown beyond a reasonable doubt. *Jones* v. *Jones,* 88 Miss. 787; *Moffett, Hodgkins Co.* v. *Rochester,* 178 U. S. 373-385; 24 Am. & Eng. Ency. Law (2 Ed.), pp. 649, 650, and note.

If Mrs. McQuaid slept upon her rights until after a fire, certainly this Insurance Company ought not to be made to suffer for her negligence. She speaks in her testimony of what she intended to do, which is of no legal effect, unless it can be coupled with the same intention in the mind of the Insurance Company, or its authorized agents, and that there was a definite, concluded agreement prior in time to the execution of the policy entered into by Mrs. McQuaid and the authorized agents of the Insurance Company to make the contract and to change the assured, and on these facts the minds of the contracting parties must meet as they would in any other contract, and this must be shown beyond every other reasonable hypothesis. Mrs. McQuaid's testimony don't approximate this requirement of the law. She claims that she telephoned some unknown party in the office of Wharton & Roberts, and that this person answering the telephone, whether he be the portor or janitor, or some visitor in the office we don't know, but nothing is shown in the evidence to establish the fact that the person talking to Mrs. McQuaid, as she claims, had any connection whatever with the office of Wharton & Roberts, and certainly, whoever he might be, had no authority to change the contract and make a new contract of insurance by the insertion of a new name as the assured in the policy. *Company* v. *McIntosh,* 86 Miss. 236; 1 Cooley's Briefs on Insurance, page 372; Cooley's Briefs on Insurance, p 368; *Wilczinski* v. *L. N. O. & T. Railroad Co.,* 66 Miss. 595-610; See, also, 20 Am. & Eng. Ency. Law (2 Ed.), 811, 24 Am. & Eng. Ency. Law (2 Ed.), 656; *Oswald* v. *Mc-*

*Gehee,* 28 Miss. 340; 2 Pomeroy's Eq. Jur., 839-860; 1 Story on Eq. Jur., 200; 24 Am. & Eng. Ency. Law, p. 656.

The acceptance of this policy as first written to Mc-Quaid and Fitzgerald by the agent, Bridges, and its subsequent delivery to Mrs. McQuaid without objection, made the same binding upon her and this appellee as to all its terms and conditions. *Rosenstock* v. *Insurance Co.,* 82 Miss. 674; *Insurance Company* v. *Bouldin,* 100 Miss. 677; *Home Mutual Fire Ins. Co.* v. *Pittman,* 71 So. 739.

## TELEPHONE COMMUNICATIONS.

It was argued in the court below before the chancellor by the attorneys for appellee that, Mrs. McQuaid having testified in her deposition that she telephoned the office of Wharton & Roberts requesting a change in this policy from ''McQuaid & Fitzgerald to Edward F. McQuaid, a minor;'' that she thought the policy was written in the Hamilton Insurance Company. This constituted a contract with this Insurance Company, appellant, without identification of the party at the other end of the line and without showing that such party had any authority to bind this appellant. On page 29 of the record she states that she told the person answering the telephone that she wanted to have the insurance transferred from ''McQuaid & Fitzgerald to Edward F. McQuaid, a minor, Mrs. Margaret McQuaid, guardian.'' These are two different requests, altho evidently intended to mean the same thing, claimed by Mrs. McQuaid to have been telephoned to the office of Wharton & Roberts after she heard from her lawyer, Mr. Alexander, that the court had approved of the partition of the realty. Now, this partition of the realty, as the court will see on page 80 of the record, was made by the commissioners appointed by the chancery court of Hinds county and filed June 26, 1909. Therefore, she had been per-

mitting this policy to be written in the name of Mc-Quaid & Fitzgerald from 1909 to May 17, 1915, the latter date being the date of the fire, and she now complains, after the fire, that she had given previous notice to change it. The question presented by this record is, can a person telephone to an insurance office to make a contract of insurance over the telephone with some person answering the telephone, without any proof that such person answering the telephone had any connection with the insurance office of the company sued, or any authority whatever to act for the company sued as its agent. Mrs. McQuaid in her testimony does not identify the person to whom she talked, thinking at first it was the voice of H. C. Roberts, and the party talking to her advised her that Mr. Roberts was not in the office, that he would not return for two hours, or possibly more. She then didn't know with whom she was talking, except that the party talking to her said: "I will fix it up for you." Mr. H. C. Roberts denied that he ever had any such conversation with Mrs. McQuaid and Miss Mix, the only other person in the office of Wharton & Roberts who had authority to change endorsements on policies or change the name of the assured, denies that she ever had any such telephone message, and these are the only ones thru whom Mrs. McQuaid could have made any binding agreement with the insurance company to change the assured from McQuaid & Fitzgerald to Edward F. McQuaid, appellee. She does not claim that she had any conversation with either one of these parties, and don't know who the person was talking at the other end of the line, with whom she claims to have had the agreement.

We say as a matter of law that this evidence is absolutely insufficient to bind any insurance company whatever on any such contract made in any such definite way. The party is not identified with whom Mrs. McQuaid claims to have had the conversation, no authority of such party is shown by which such party

·could bind the insurance company to the agreement as claimed. by Mrs. McQuaid, and there is no definite, ·concluded agreement shown, prior in time to the exe- ·cution and delivery of the policy, on which the minds of the parties had met in reference to the five essentials. ·of an insurance contract which we have above set forth, on which Mrs. McQuaid could claim any contract was made by her with the insurance company sued in this ·case.

The court necessarily decided that the liability of this company must rest on the alleged telephone com- munication testified to by Mrs. McQuaid, because there is no other evidence on which liability could possibly be predicated.

The supreme court of Mississippi in the case *In- .surance Co. v. Odom,* 100 Miss. 219, at the foot of page :240 lays down the rule that is the law everywhere, so .far as we have been able to find it, which is as follows: ·"The burden of proof is upon him who asserts it to ·show a direct authorization of the agent or by proving such facts or circumstances, or such a course of con- ·duct, as by implication it can be presumed that the agent was acting within the real or apparent scope of his authority. One rests on fact and the other on the ·supposed fact. But before the alleged principal is precluded from denying the existence of the supposed ·fact it is necessary that the other party should show ·that he was misled, not by the alleged agent, but by the ·principal."

If there is one scintilla of evidence in this entire rec- ·ord that the insurance company or its authorized agents H. C. Roberts or Miss Elizabeth Mix, misled Mrs. Mc- ·Quaid in any way, we have been unable to find it out by ·any construction possible of Mrs. McQuaid's testimony, for both Roberts and Miss Mix deny that they ever had ·any conversation with Mrs. McQuaid and she don't ·claim that she talked to either of them. The law of :agency established all over the country, as far as we

can find, is that every person deals with an agent at his peril. He must know the extent of such agent's authority before he can bind the principal. But the attorney for the appellee have struck down all these laws, in this case and have led the court off on the doctrine announced in the case of *Gilliland* v. *Southern Railway Co.* (S. C.), 67 S. E. 20, 27 L. R. A. (N. S.) 1107, where this court erroneously held, in our judgment, that one who answers a telephone call from the place of business of the person called for and undertakes to respond as his agent is presumed to speak for him in respect to the general business carried on by such person at that place. This is a new rule of agency. 27 L. R. A. (N. S.) 1110.

The court will find the question of telephone communications fully discussed in the note to the case of *Planters Cotton Oil Co.* v. *Western Union Telegram Co.,* 6 L. R. A. (N. S.) 1180, et seq. The court will there notice, on page 1181, that a distinction is drawn between a mere "notice" telephoned to a general office and a situation requiring the indentification of the individual where the purpose of the telephone communication is the making or modification of a contract of such a character that one would be charged with notice that it could only be made by a particular individual. First Column of note on page 1181 of 6 L. R. A. *supra. Kinkbark* v. *Illinois Car & Equipment Co.,* 103 Ill. App. 632; *Swing* v. *Walker,* 27 Pa. Super. Ct. 366, 6 L. R. A. (N. S.) general resemblance is noted.

The true rule, if the court please, in reference to telephone communications will be found set forth in the case of *Young* v. *Seattle Transfer Co.,* 99 A. S. R. 942. The decree of the chancellor is clearly erroneous, and in the language of the court in the *Seattle Transfer Company Case,* 99 A. S. R. at the foot of page 948, there is a failure of proof on material issues joined in this case and the decree of the court cannot stand.

*Watkins & Watkins,* for appellee.

The telephone message from Mrs. McQuaid, the appellee's mother, to the office of Wharton & Roberts was compentent, relevant and admissible evidence. 19 Cyc., page 812; *Arf* v. *Star Fire Ins. Co.* (N. Y.), 21 Am. St. Rep. 712; *Steele* v. *German Fire Ins. Co.* (Mich), 18 L. R. A. 85; *Pollock* v. *German F. Ins. Co.* (Mich.), 86 N. W. 1017; *Hamm Realty Co.* v. *Ins. Co.* (Minn.), 87 N. W. 933; *Otis* v. *Ins. Co.* (Minn.), 97 Am. St. Rep. 532; *Deitz* v. *Ins. Co.,* 25 Am. St. Rep. 908; *Wolfe* v. *Mo. Pac. R. R. Co.,* (Mo.), 3 L. R. A. 539; *Reed* v. *Burlington* (Ia), 2 Am. St. Rep. 243.

The entire question of conversations over the telephone is discussed with great learning in the note to the case of *Central Union Tel. Co.* v. *Fairley* (Ind.), 10 Am. St. Rep. 128, on page 135; *People* v. *Ward* 3 N. Y. Crim. R. 483, 511; *Wolfe* v. *Mo. Pac. Ry. Co.,* 97 Mo. 473, post p. 331; *Godair* v. *Hamilton Nat'l Bank,* 225 Ill. 572, 116 Am. St. Rep. 172; *Wolfe* v. *Mo. Pac. R. Co.,* 97 Mo. 473, 10 Am. St. Rep. 431, 11 S. W. 49, 3 L. R. A. 539; *General Hospital Society* v. *New Haven Rendering Co.* (Conn.), 118 Am. St. Rep. 173; *Stirling* v. *Buckingham,* 46 Conn. 461, 463; *State* v. *Wadsworth,* 30 Conn. 55; *State* v. *Glidden,* 55 Conn. 46, 30 Am. St. Rep. 23, 81, 8 Atl. 890; *Hurlburt* v. *McKone,* 55 Conn. 46, 3 Am. St. Rep. 17, 10 Atl. 164; *New England Mfg. Co.* v. *Starin,* 60 Conn. 369, 22 Atl. 953; *Starkey's Appeal,* 61 Conn. 199, 23 Atl. 1080; 9 Am. & Eng. Cas. pg. 170; *Gilliland* v. *So. R. R. Co.* (S. C.), 27 L. R. A. (N. S.) 1106.

Those who install telephones in their places of business in connection with a telephone exchange, and use them for business purposes, impliedly invite the business world to use that means of communicating with them with respect to the business there carried on; and the presumption is that they authorize communications made over the telephone in ordinary business

transactions. *General Hospital Society* v. *New Haven Rendering Co.,* 118 Am. St. Rep. 173, and note; 79 Conn. 581, 65 Atl. 1065; 9 A. & E. Ann. Cas. 168, note in 6 L. R. A. (N. S. 1180; *Godair* v. *Ham. Nat. Bank.* 116 Am. St. Rep. 172, and note 295 Ill. 572, 80 N. E. 407, 8 Am. & E. Ann Cas. 447; *Wolfe* v. *Mo. Pac. R. Co.,* 97 Mo. 473, 8 L. R. A. 530, 10 Am. St. Rep. 331, 11 S. W. 49; Wigmore Ev., sec. 2155; *Reed* v. *Burlington C. R. & N. R. Co.,* 72 Ia. 166, 2 Am. St. Rep. 243, 33 N. W. 451; *Oskamp* v. *Gadsden,* 35 Neb. 7, 17 L. R. A. 440, 37 Am. St. Rep. 428, 52 N. W. 718.

The reason is the same as that for the presumption that a business letter properly directed, and sent by mail, reaches the business office of the addressee, and is opened by him or his authorized agent. The presumption that the person who answers is authorized to speak may be very slight or strong, according to the circumstances, but the statements of such persons should be admitted in evidence as *prima facie* the statements of one having authority to speak. It is important to observe that the presumption extends only to communications relating to the usual business carried on at the place from which the telephone communication comes. *Young* v. *Seattle Transfer Co.,* 33 Wash, 225, 63 L. R. A. 988, 99 Am. St. Rep. 947, 74 Pac. 375; *Planter's Cotton Oil Co.* v. *Western U. Tel. Co.,* 126 Ga. 621, 6 L. R. A. (N. S.)1180, 55 S. E. 495; *Union Const. Co.* v. *Western Union Tel. Co.,* 168 Cal. 298, 125 Pac. 242.

"The question has never heretofore been considered by this court. It has frequently arisen in other states, and the decisions in the main support our conclusion. The following cases, in effect, declare the rule to be as we have stated it. *Wolfe* v. *Ry. Co.* (1888), 97 Mo. 481, 10 Am. St. Rep. 331, 3 L. R. A. 539, 11 S. W. 49; *Globe P. Co.* v. *Stahl,* (1886), 23 Mo. App. 451; *Guest* v. *Hannibal, etc., Co.,* (1898), 77 Mo. App. 262; *Kansas C. S. Co.* v. *Standard W. Co.* (1907), 123 Mo. App.

13, 99 S. W. 765; *Star B. Co.* v. *Cleveland F. Co.* (1907), 128 Mo. App. 517, 119 S. W. 802; *Rock I., etc.,* *Co.* v. *Potter* (1889), 36 Ill. App. 592; *Rogers Grain* *Co.* v. *Tantor* (1907), 136 Ill. App. 533; *Godair* v. *Hamilton N. Bk.* (1907), *General H. Soc.* v. *New Haven* *Co.* (1907), 79 Conn. 581, 118 Am. St. Rep. 173, 9 Ann. Cas. 168, 65 Atl. 1065; *Knickerbocker Ice Co.* v. *Gardner* *Co.* (1908), 107 Md. 571, 16 L. R. A. (N. S.) 746, 69 Atl. 405; *Miller* v. *Lieb* (1909), 109 Md. 425, 72 Atl. 466; *Conkling* v. *Standard Oil Co.* (1908), 138 Ia. 596, 116 N. W. 822; *Western Union Tel. Co.* v. *Rowell* (1907), 153 Ala. 314, 45 So. 73; *Barrett* v. *Magner* (1908), 105 Minn. 120, 127 Am. St. Rep. 117 S. W. 245; *Hotzhauer* v. *Sheeny* (1907), 127 Ky. 35, 104 S. W. 1034; *Gilliland* v. *So. R. R. Co.* (1910), 85 S. C. 36, 137 Am. St. Rep. 861, 27 L. R. A. (N S.) 1106, 67 S. E. 20.

There are a few decisions to the contrary. *Young* v. *Seattle T. Co.* (1903), 33 Wash. 225, 99 Am. St. Rep. 942, 63 L. R. A. 988, 74 Pac. 375; *Planters, etc., Co.* v. *Western Union Tel. Co.,* (1906), 126 Ga. 621, 6 L. R. A. (N. S.) 1180, 55 S. E. 495; *Murphy* v. *Jack,* 142 N. Y. 215, 40 Am. St. Rep. 590, 36 N. E. 882, and *B. Co.* v. *Adams,* 35 Ill. App. 540, take the opposite view. *Oberman* v. *Adams,* so far as applicable here, is overruled by the later case in the court of appeals, and the supreme court of Illinois above cited. In *Murphy* v. *Jack,* the point received slight attention.

The other two cases as is pointed out in 6 L. R. A. (N. S.) 1180, in the note to the Georgia case, are contrary to the weight of authority. The respondent cites the following cases, claiming that they also are contrary to the rule we have announced. *People* v. *McKane,* 143 N. Y. 474, 38 N. E. 950; *Stepp* v. *State,* 31 Tex. Cr. App. 349, 20 S. W. 753; *People* v. *Strollo,* 191 N. Y. 42, 83 N. E. 573; *Deering Co.* v. *Shumpik,* 67 Minn. 348, 69 N. W. 1088; *Harrison G. Co.* v. *Penn. R. Co.,* 145 Mich. 712, 108 N. W. 1081, and *Lord Electric Co.* v. *Morrill,* 178 Mass. 304, 59 N. E. 807. In each of these cases there was

either a recognition of the voice of the other party, or other sufficient evidence of his identity, and the remarks indicating a contrary doctrine than here stated are *obiter dictum*. The Minnesota case, so far as it is contrary to the main current of authority, is, in effect, overruled by the later decision in *Barrett* v. *Magner*, 105 Minn. 120, 127 Am. St. Rep. 531, 117 N. W. 245.

"In the application of the rule, many of the conditions we have mentioned are usually deemed matters of judicial knowledge, or as implied from other facts, and are not expressly shown. The general rule, as gathered from the foregoing decisions, is that where it is shown that the witness called up the other party at his place of business, through the central station, with which both were connected, and received a response as in the usual course of business over the telephone, this is sufficient *prima facie* identification of the speaker at the other end of the line as the party called, or his authorized agent, and that, upon such proof, the ensuing conversation, if otherwise admissible, may be testified to by the witness. It is proper to add that the weight of such evidence depends largely upon the circumstances of each case, and is always a question for the trial court or jury. The court below erred in excluding the evidence of Vender and Jackson relating to the subject."

COOK, P. J. delivered the opinion of the court.

This case originated in the chancery court of the first district of Hinds county, and is an action to reform a certain fire insurance policy issued on the 11th day of December, 1912, by the St. Paul Fire & Marine Insurance Company to Fitzgerald & McQuaid, tenants in common of a frame dwelling located in the city of Jackson, which building was destroyed by fire. The insurance on the building destroyed had been carried by the agency of Wharton & Roberts, located at Jackson, for some years prior to the date of the policy the bill of complaint seeks to reform. All of the policies, including the

present policy, named Fitzgerald & McQuaid as the owners of the building insured. The complainant below, appellee here, is the son of the McQuaid named in the policies. In 1909, Mr McQuaid died, and by proper proceedings in the chancery court, the property belonging to Fitzgerald & McQuaid was partited, and the property in question was assigned to appellee.

Mrs. McQuaid, the mother of appellee, qualified as guardian of appellee, and she testified that she called up the agency of Wharton & Roberts over the telephone; that some one answered the telephone call, and she told this person that she wanted to speak to H. C. Roberts, who was then the owner of the agency. She said that she believed at the time that she recognized the voice answering the telephone as that of Mr. H. C. Roberts. However, she stated that the person at the other end said that Mr. Roberts was not then in the office, and would not be there for some time, but that he was a clerk in the office and could attend to her business. She testified, further, that she told this person that the building had been assigned by the decree of the court to Edward F. McQuaid, and she wanted the insurance transferred to his name, to Edward F. McQuaid, a minor, Mrs. Margaret McQuaid, guardian; that the voice answered that he would attend to the matter and have the insurance transferred as requested. The testimony of Mrs. McQuaid about the telephone conversation was corroborated by another witness. We have stated briefly, but, we think, comprehensively and as strong as may be, the testimony of Mrs. McQuaid, because the decree of the chancellor granting the prayer of the bill must stand or fall upon her evidence.

The course of business between the insurance agency and the firm of Fitzgerald & McQuaid had been to write policies insuring their property for a term of three years, and when the policy immediately antedating the one which is the subject of this suit expired, they wrote this policy in a different company.

Mr. H. C. Roberts, the owner of the agency, testified that he never heard of the telephone conversation until shortly before this suit was begun; that he had no telephone conversation with Mrs. McQuaid. The son of Mr. Roberts, who was a clerk in the office, testified that he had not talked with Mrs. McQuaid over the telephone, and never heard of the alleged telephone conversation until shortly before the beginning of this suit.

There was a young woman clerk in the office whose duty it was to make all transfers of insurance, and she testified that she wrote the policy in question and named Fitzgerald & McQuaid as the owners of the property insured; that she did that advisedly, and there was no mistake in the policy so far as she was concerned; that she did not intend to transfer the insurance to appellee, and never heard of the alleged telephone conversation with Mrs. McQuaid, and, therefore, no mistake, accident, or inadvertence occurred in the writing of the policy.

It appears that another man, Mr. Davis, was employed by the agency at the date Mrs. McQuaid fixed the telephone conversation. Mr. Davis was not in the employ of the agency when the suit was filed, or when the evidence was taken, and was not examined as a witness. Counsel say that Mr. Roberts, the son of H. C. Roberts, while under cross-examination, said that it was possible for him to have had a telephone conversation with Mrs. McQuaid and have forgotten it, but he could not see how it was possible. From this they say that he does not positively state that he had no such conversation. This, we think, is hypercritical. Any honest man is bound to admit that it is possible for him to forget. The witness was, we think, quite postive that he did not talk with Mrs. McQuaid.

So, the record shows that the defendant, and no agent authorized to act for them, made any contract or agreement to transfer the insurance to Edward McQuaid, unless it can be said that Davis' failure to testify supplies the missing link.

The case stands about this way: Mrs. McQuaid called up the telephone exchange and asked to be connected with the Roberts Insurance Agency, and presumably she was connected with the agency; some one answered the phone call—Mrs. McQuaid knew that this person was not Mr. Roberts, the man she intended to talk with—she did not ask who it was; this person agreed to have the insurance transferred; the message was never delivered to the clerk whose duty it was to make the contract; no memorandum was made and filed by this person in the records of the office; the transfer was not made, but when the policy previously issued expired, it was rewritten in another company. The contract as written was deliberately and intentionally made with the former owners, Fitzgerald & McQuaid. This is not a suit against the insurance agency for breach of contract, but is a suit for the reformation of a contract with the appellant insurance company. Mrs. McQuaid did not select the insurance company—she says that she left the selection of the company to the Roberts Agency; the Roberts Agency did not select the appellant to write a risk on the property of Edward McQuaid—this is made clear by the clerk who wrote the policy. Certainly no actual mistake was made in writing the policy. Was the failure to write the policy according to Mrs. McQuaid's request such a mistake as would warrant a court of equity in reforming the policy written so as to make it conform to Mrs. McQuaid request, made in the manner she says it was made? Stated in another way, did the evidence justify the decree of the chanceloor? By all the evidence in the case no one authorized to transfer the insurance had any notice of the request.

Some more facts appear in the record. The policy which the policy issued superseded was dated December 11, 1909, and expired December three years later. The policy in question is dated December 11, 1912, and expires three years after date, while the fire occurred May 15, 1915. The premiums on this policy were paid

by Mr. Bridges, who was the agent of appellee to collect. rents and look after the property. Mr. Bridges sent. statements to appellee which show on their face that the premiums were paid on a policy issued to Fitzgerald & McQuaid. There is nothing to indicate that any objections were made to Mr. Bridges' account. If the statements were read, the appellee or his mother must have known that no change had been made in the beneficiaries in the last policy; that this policy named Fitzgerald & McQuaid as the owners of the property insured.

Now as to the law touching conversations over telephones: We think the law is well settled that such conversations are admissible in evidence. The fact that the voice at the telephone was not identified does not render the conversation inadmissible. The weight to be given to such evidence is largely left to the jury, or to the chancellor, when the case is tried without a jury. In *Central Union Tel. Co.* v. *Fairley,* an Indiana case reported in 118 Ind. 194, 19 N. E. 604, 10 Am. St. Rep. 128, and in the notes thereto, may be found a full discussion of this subject. There was no error in admitting Mrs. McQuaid's evidence touching the telephone conversation.

The real question is, Did Mrs. McQuaid's testimony, taken in connection with all the evidence, warrant the decree? This court, speaking through Judge Truly, in *Jones* v. *Jones,* 88 Miss. 784, 41 So. 373, said:

"Adhering to the arbitrary, but salutary, rule which requires a party seeking reformation of a deed, the recitals of which are definite and unambiguous, to establish, not only by the preponderance of the testimony, but practically to the exclusion of every other reasonably hypothesis, that mutual mistake, fraud, or error occurred in the making of the instrument sought to be reformed, we are constrained to hold," etc.

"Reformation of an agreement, sought by reason of an alleged mistake in drawing it up, can only be had upon proof, clear and free from doubt. *Harrington* v.

*Harrington,* 2 How. 701; *Mosby* v. *Wall,* 23 Miss. 81, 55 Am. Dec. 71.''

Tested by the rules announced by this court, it seems that the chancellor resolved all doubt in favor of the party seeking reformation. On his side, a telephone conversation with some unidentified person was proven, and there the case was rested. The defendant then proved by all of the witnesses available, and all who were authorized to change policies, or write new policies, and established that no such conversation was had with them, and they never heard of it. The person to whom was delegated the power to change or write new policies knew nothing of the conversation, and wrote the policy binding this company without mistake and exactly as she intended to write it. By his decree, the chancellor makes a contract for this company which it never heard of until this suit was begun; the chosen agent of the company made no such contract—no one authorized to make the contract knew anything about the contract. But there remained the telephone conversation, and this was all powerful. If the chancellor was right in his conclusions, a merchant with a legion of employees, when sued on a alleged telephonic contract with some unidentified employee, which conversation changed a written contract, would have to scour the country for his employees who had left his employment and bring every man to the witness stand who could possibly have had such conversation, and prove each and all of them knew nothing of the alleged telephone agreement.

It was, of course, incumbent upon the defendant in this case to show with reasonable certainty that the message was not taken or received by any employee authorized to receive and pass along important messages of this character. This, we think, was done.

*Reversed and remanded.*