In Re Estate of Frank F. Wood, Deceased, Minnie I. Wood, Administratrix, Appellee, v. William V. Tyler, Appellant.

Gen. No. 33,893.

402

Opinion
filed March 11, 1930.   Rehearing denied March 24, 1930.

C. R. ADAMS, for appellant.

E. R. HARTIGAN, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

In the probate court of Cook county, Minnie I. Wood, administratrix of the estate of Frank F. Wood, deceased, filed a petition for a citation against the respondent, William V. Tyler, in which she alleged that he had in his possession moneys belonging to the deceased. A citation issued and the cause was heard by the court upon evidence offered by the petitioner and the respondent. The court found that on September 8, 1925, Frank F. Wood received from A. V. Booth & Company its check for $4,374.53, the proceeds of the sale of a certificate of membership of Wood in the Chicago Board of Trade; that the check was payable to the order of Wood and that on September 8, 1925, he indorsed it to W. V. Tyler, Trustee, and delivered it to the respondent; that the latter, as trustee and

individually, indorsed the check and is chargeable thereon for the moneys evidenced thereby; that Tyler never paid to Wood or his estate the moneys evidenced by the check; that the said moneys belonged to Frank F. Wood, deceased, and now to his estate, and that the respondent withholds the moneys from the estate, and the court ordered that the respondent turn over or pay to the administratrix the sum of $4,374.53 within 30 days from the date of the order. Respondent appealed from this order. When the cause was called for trial *de novo* in the circuit court he demanded a jury trial, and thereafter the cause was tried before the court, with a jury, and a verdict was returned finding that the respondent had in his possession $4,374.53 belonging to the estate. Judgment was entered upon the verdict and respondent has appealed.

Respondent contends that "the great weight of the evidence preponderates in favor of the respondent." From an examination of the abstract it was apparent that the record had been insufficiently and inaccurately abstracted and we were therefore compelled to read the entire bill of exceptions to ascertain the actual evidence heard upon the trial. We found that, frequently, material evidence, prejudicial to respondent, was omitted from the abstract and that it also contains many mere conclusions, comments and arguments of the drafter. The petitioner not only failed to file a supplemental abstract, but in her short and inadequate brief failed to challenge in any way the accuracy or sufficiency of the abstract. Under the practice we might well have affirmed the judgment of the lower court for want of a sufficient and proper abstract.

Frank F. Wood died March 16, 1926. He had been a member of the Chicago Board of Trade. The respondent had been his attorney for a number of years. Wood was in debt and harassed by his creditors. On September 8, 1925, he sold to A. V. Booth & Company his membership on the Board and received from that

company, in payment of the same, its check for $4,374.53, payable to the order of F. F. Wood. On the same date Wood took this check to the office of the respondent and there made the following indorsement on it: "Pay to the order W. V. Tyler, Trustee. F. F. Wood." Respondent made the following indorsements on the check, "W. V. Tyler, Trustee W. V. Tyler," and deposited it in his bank to his personal account. On September 8, 1925, he wrote out and gave to Wood the following receipt: "Sept. 8th 25 Rec'd of F. F. Wood Check $4,374.53 for settlement of outstanding troubles W. V. Tyler." The administratrix found the check and receipt in the pocket of her husband after his death. In support of the petition there was also introduced evidence tending to prove that the respondent, after the death of Wood, admitted that he was indebted to the latter. Respondent conceded that he never paid anything to Wood, or on account of Wood, from the proceeds of the check. His defense, as we understand it, is substantially as follows: In the same office with him was an organization called the Anti-Vice League, which was maintained by contributions; that the respondent was its attorney, and from evidence introduced in his behalf it appears that he participated, to some extent, in the business affairs of the League; that H. C. Wells and J. P. Harris were officers of the corporation, and on October 8 they, acting for the League, cashed the check in question for Wood; that the League then owed respondent for legal services rendered, and on October 9 Harris gave respondent the check "in settlement for a sum due me from the Anti-Vice League"; that respondent did not receive the check from Wood and therefore did not have to account to Wood or to his estate for the proceeds he received from the check; that on October 8, when Harris and Wells stated that they were going to cash the check for Wood, respondent indorsed the check "W. V. Tyler, Trustee," "because he then had no interest in

it''; that respondent indorsed the check ''W. V. Tyler'' on October 9, after it had been given to him by Harris in payment of his account against the League.

Respondent admitted that in the hearing in the probate court he testified that he could not explain why the check had been made payable to him as trustee and that ''Mr. Harris suggested it as a way that I could do that. He would take it and cash it and put it through my bank, a matter of deal between man and man.'' He further stated that on September 8 Harris and Wood came to the respondent and asked him for something that ''they could use, that he could show to fix his creditors.'' At the time of the hearing in the probate court Wells and Harris were dead, and the evidence as to the occurrences that respondent claims took place on October 8 and 9 in his office, was given by him alone. No one connected with the League was called by him to give testimony of any kind, nor were any of the bank books, account books or records of the League introduced in evidence, although, as we have heretofore stated, evidence offered by respondent tends to show that he had to do with certain business matters of the League. Respondent was unable to produce any statement of account between him and the League and he testified that he had destroyed his bank statements and checks that related to the period in question. The respondent was unable to give a satisfactory reason as to why Wood indorsed the check to him as trustee, when, according to his testimony, Wood's dealings were with the League and it cashed the check for Wood; or why, when Harris and Wood brought the check to him for his indorsement, and he found that it was indorsed to him as trustee, he did not indorse it back to Wood instead of indorsing it in blank; or why, when the League gave him the check in payment of his fees, he did not require or even request it to indorse the check, especially in view of the fact that the check was first indorsed to him as trustee. The

respondent, in his reply brief, admits that the receipt he gave Wood on September 8, on its face, created a trust. The check and the receipt, especially in view of the fact that the respondent is a lawyer, are silent but powerful witnesses to the actual transaction that took place in the respondent's office in September, 1925.

Respondent called certain witnesses who testified to alleged statements made to them by the deceased. Each testified to an alleged conversation with the deceased when no third person was present. The judge of the probate court and the jury in the circuit court refused to believe this evidence, and the judge of the circuit court, by his action in entering judgment on the verdict, approved the finding of the jury in that regard. When the evidence of these witnesses is tested in the light of certain established facts in the case, it seems clear to us that no weight can be given to it. We shall not attempt to give, in detail, the reasons that have forced us to this conclusion. We will, however, briefly refer to certain parts of this evidence.

Frank Heinrich, a client of the respondent for 8 or 10 years, testified that in October, 1925, he was in the office of the respondent and heard the deceased say to respondent: "Here is $25. I want you to give me a check for Mrs. Wood, I sold my certificate—Board of Trade certificate—but she don't know anything about it." This evidence was intended to avoid, in part, the effect of the testimony of Mrs. Wood, that from October, 1925, until March, 1926, when her husband died, she received every month the personal check of the respondent for $25. The proof shows beyond question that the respondent knew on September 8 that the deceased had sold his certificate. In fact, the check of that date bears upon its face the words "a/c Membership." The witness further testified that after he and Wood had left the office of respondent, Wood stated that "the Board of Trade had a couple of fellows and

they took money out and cashed his check." Then the witness stated that the deceased said that "the Anti-Vice League cashed it." The witness further testified that the deceased also said that "nobody owed him any money." The witness Arthur Jankey admitted that he had not worked for six years save that he had been "working on a song for six years." This witness testified he first met Wood in February, 1926, and that the second time that he met him (date not mentioned) was in the lobby of the Morrison hotel, where Wood asked him to go on an errand for him, and gave him an envelope in which were inclosed three checks, aggregating $70, and told him to deliver the envelope to the respondent and to receive from the latter a check in return, and to bring it back to him; that the witness took the envelope and delivered it to the respondent and that the latter wrote out a check for $70, which the witness looked at and then put in an envelope and then went back to the Morrison hotel lobby and delivered the envelope to Mr. Wood. On cross-examination the witness testified that Wood "pulled the envelope out of his pocket and put these checks in one envelope" and "sealed it up" and gave it to the witness. The Morrison hotel is located about two blocks from the office of the respondent. Arthur L. Peticolas testified that he was a "free lance writer" and that in the fall of 1926 the respondent asked him to do some work for the League, and the witness was then put to work sending out literature for the League, and in December, 1926, the respondent asked him what he knew about Wood's affairs and he then told the respondent for the first time of certain conversations that he had with Wood. The principal point in the evidence of the witness was that in December, 1925, he met Wood outside of the Capitol building, located at State and Randolph streets, and that Wood asked him to wait for him there and that Wood then left and

was gone about ten minutes and when he returned, and while they were still on the street, Wood pulled out of his pocket a roll of bills large enough to "choke a horse," and the witness asked him: "When did you get it, just now?" and that Wood answered, "Never mind I got it." The respondent also relies, in support of his theory of fact, upon respondent's Exhibit 1, which purports to be an acknowledgment by the League of an indebtedness to Wood, and which the respondent stated he received from Mrs. Wood after the death of her husband. Mrs. Wood testified that after the death of her husband she found "a contract" and that she handed it to respondent and at the same time told him that she had found it in her husband's pocket; that the respondent took the paper, "looked at it queerly," and then said: "You got to leave it here or you wouldn't be able to get any money"; that thereafter she went to the respondent and asked him to return to her the paper she had left with him and that he said: "What paper? I said, the paper I give you. He turned around and opened his draw of his desk and handed me something like that," indicating respondent's Exhibit 1. The witness stated positively that respondent's Exhibit 1 was not the paper she left with respondent, and that she refused to accept the same from him and demanded the paper she had left with him, and that he became angry and she left his office and never returned there, and that she at once secured other counsel to represent the interests of the estate. Respondent's Exhibit 1 purports to be signed by Harris and Wood as officers of the League, but the respondent failed to call any person connected with the League to testify as to the instrument in question, nor were any records of the League produced in connection with the exhibit. The respondent apparently introduced respondent's Exhibit 1 in support of his testimony that on September 8 Harris and Wood came to him and

asked him for something that "they could use, that he could show to fix his creditors." In our opinion, the jury were justified in believing that respondent's Exhibit 1 was not the paper handed to respondent by Mrs. Wood. After a painstaking examination of all the evidence in the case, we are satisfied that the contention of the respondent that the great weight of the evidence preponderates in his favor is without the slightest merit. We are entirely in accord with the findings of the judge of the probate court and the jury in the circuit court in the matter of the evidence.

While the respondent was testifying in his own behalf the following occurred: "Mr. Adams (counsel for respondent): And for what did Mr. Harris give you that check? A. In settlement for a sum due me from the Anti-Vice League. Mr. Hartigan (counsel for petitioner): I object. The Court: Sustained. Mr. Adams: I think we ought to show that. The Court: I agree with you, but he wouldn't testify at all if I was trying the case. You have a right to show it with competent evidence. Wood, would know too, if he was here to testify, but the law says he cannot say it because Wood cannot say it. Mr. Adams: He knows whether he got that check from Mr. Harris or not. The Court: He cannot tell it because Wood cannot, that is the objection he is making." The respondent contends that the court committed reversible error in stating that the respondent "wouldn't testify at all if I was trying the case." It is a sufficient answer to the present contention to say that the respondent made no objection to the statement. The trial court was, of course, correct in ruling that the respondent was not a competent witness to testify, in his own behalf, as to the alleged transaction of the respondent with the League. We may add, however, that because of the failure of the counsel for the estate to interpose proper objections the respondent was allowed to testify

to the alleged transactions between the League and
Wood and between the League and himself. Had the
counsel for the estate seen fit to object, the respondent
would have been unable to make out a *prima facie*
case as to the alleged transactions between the de-
ceased and the League.

Respondent contends that "a wife cannot testify
for or against her husband, dead or alive." We find
it rather difficult to follow the argument of the counsel
in reference to this contention. Mrs. Wood was placed
on the stand for the purpose of testifying as to con-
versations she had with the respondent after the death
of her husband. She was competent, of course, to give
such testimony. In fact, the respondent made no ob-
jection as to her competency. During the examination
of Mrs. Wood, while she was testifying as to a con-
versation she had with the respondent, the court asked
her if she told the respondent what money he had, to
which the witness answered: "Mr. Wood told me he
had money." Counsel for the respondent moved to
strike the answer but the court apparently did not pass
upon the motion and the respondent now contends that
it was prejudicial error to allow the answer to stand.
The answer of the witness was not responsive to the
question and if the counsel for the respondent had
seen fit to call the attention of the court to the nature
of the answer it would doubtless have been stricken, as
the court ruled on several occasions that such evidence
was incompetent. The respondent did not see fit to
call the attention of the court to the nature of the
answer or to insist upon a ruling, and he is therefore
in no position to fairly raise the present contention.
The respondent also contends that the court erred in
examining Mrs. Wood at too great length. Respondent
made no objection to the court's examination and we
do not think that the examination indicated that the
court had any opinions respecting the merits of the

case. The Supreme Court has held that it is within the province of a court to "propound pertinent and properly-framed questions to a witness to clear up the record when it appears that such questions will not be asked by counsel," and we are satisfied from the record that it was necessary for the trial court to ask questions in the present case.

The respondent contends that the court erred in permitting the witness Pinsonnault to testify to alleged conversations he had with the respondent over the telephone, for the reason that the witness admitted that he did not know Tyler and therefore could not recognize his voice. There is no merit in this contention. The mere fact that Pinsonnault did not know the respondent and could not identify the voice did not make the evidence inadmissible. (*Godair v. Ham Nat. Bank,* 225 Ill. 572, 575.) Pinsonnault worked for Hursen, an undertaker, and the respondent admits that he recommended Hursen to Mrs. Wood after the death of Wood. Mrs. Wood testified that she told the respondent that he had money belonging to her husband and insisted that he should pay the undertaker's bill, and that he promised several times that he would attend to it. Pinsonnault testified that he found the telephone number of the office of the respondent in the telephone book and called that number on the telephone and the man who answered the telephone call stated that he was not Mr. Tyler but that Mr. Tyler was there and that he would call him; that another man came at once to the telephone and that the witness asked him if he was Mr. Tyler and he responded that he was, and that the witness then stated: "Mrs. Wood was here to make arrangements for the burial of her husband," and that the respondent said that he had funds belonging to Mr. Wood and requested the witness to keep the cost of the funeral within a reasonable amount. The witness further testified that he told the respondent the amount

that the funeral bill would be, and that the respondent said that the amount was perfectly all right and to make out the bill and to mail it to him. The respondent, in the trial in the circuit court, testified that he did not talk with Pinsonnault over the telephone and that no one in his office, to his knowledge, talked with him, but it appears that in the probate court he admitted that Harris talked with Pinsonnault. The weight to be given the alleged conversation was for the jury to determine. (*Godair v. Ham Nat. Bank, supra*, 575.)

The respondent contends that "if the court refuses to give proper instructions to cover a vital or material issue in the cause, a reversible error is thereby committed," and "a party to the suit has a right to an instruction presenting the law applicable to his theory of the case." We find authorities cited in support of the legal principles stated, but no instruction is set out in the brief, nor are we referred to any instruction, even by number, to which the above contentions were intended to apply, nor is there any argument advanced in support of them. It is not our duty to search the record to see if the court erred in the giving or refusing of instructions. "Instructions of which complaint is made should be set out in full, followed by definite and clear reasons supporting the alleged errors incident thereto." (*General Platers Supply Co. v. Charles F. L'Hommedieu & Sons Co.*, 228 Ill. App. 201, 206; *Spencer v. Chicago & N. W. Ry. Co.*, 249 Ill. App. 463, 473; *Roy Iverson Co. v. United States Lloyds, Inc.*, 251 Ill. App. 150, 155.)

At the outset of the trial the counsel for the respective parties agreed that the following forms of verdict should be submitted to the jury: (1) "We the jury find the respondent, William V. Tyler, has not in his possession the sum of $4,374.53, belonging to the Estate of Frank F. Wood, deceased." (2) "We the jury

find the respondent, William V. Tyler, has in his possession the sum of $4,374.53, belonging to the Estate of Frank F. Wood, deceased.'' The respondent contends that the first judgment entered by the court contained findings not warranted by the verdict. It is sufficient to say in response to this contention that we are concerned only with the judgment that was finally entered by the court. The respondent further contends that the final judgment is in the style of a decree in chancery and contains findings not warranted by the verdict. Equitable rules apply to proceedings under section 81 of the chapter concerning administration of estates, Cahill's St. ch. 3, ¶ 82, and while some of the findings in the order were probably unnecessary, nevertheless, we fail to see how the respondent is injured thereby.

The final contention of the respondent, and the one argued most strenuously in the reply brief, is, that even if the theory of fact of the petitioner is to be believed, the receipt given by the respondent to Wood, on September 8, 1925, created a trust, and it was necessary for the petitioner ''to prove the precise elements of the alleged trust and Tyler's delinquency thereunder,'' and the argument of the respondent is, that the words ''for settlement of outstanding troubles,'' in the receipt, mean that Tyler was given this money to pay Wood's debts and that the evidence shows that Wood owed about $11,000 to his creditors, and that it was incumbent upon the petitioner to show that Tyler did not use the money in carrying out the trust. It is a sufficient answer to this contention to say that the respondent admitted that he did not use any of the moneys for the purposes suggested. On the contrary, his theory of fact was, that he received the check from the Anti-Vice League in payment of fees for services he rendered to the League; that the proceeds of the check were his and that therefore he did not have to account to the estate.

As we read and understand the record, the respondent, an attorney at law, betrayed his trust and attempted to withhold moneys belonging to the estate of his friend and client, and in support of his attempt he did not hesitate to present false testimony in two courts of justice. The judgment of the circuit court of Cook county is a just one and it should be and it is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.