### MORTON v. UNITED STATES.

### No. 4645.

Circuit Court of Appeals, Seventh Circuit.

June 23, 1932.

Rehearing Denied Oct. 7, 1932.

Harry A. Biossat and Alvin D. Blieden, both of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., and Victor E. La Rue, Asst. U. S. Atty., both of Chicago, Ill., for the United States.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellant seeks reversal because of (a) improper admission of evidence, (b) refusal of court to permit appellant to fully cross-examine government witnesses, (c) remarks of the district attorney to the jury, and (d) alleged variance between the conspiracy charged and the evidence received in its support.

Appellant argues that the only proof of Morton's guilt appears in the evidence which established one of the overt acts and which occurred before the date of the creation of the conspiracy. This contention is rejected for two reasons—legal and factual.

As a matter of law, conclusive answer to the contention is the statement that one may join an existing conspiracy, as well as participate in the formation of one. Allen v. U. S. (C. C. A.) 4 F.(2d) 688, 691. The legal consequences are the same.

Factually, the objection is not well taken, because the evidence of the overt act may, and it did in this case, carry the added persuasive inference of guilty participation in an existing conspiracy, as well as the commission of the substantive crime. Overt acts may be innocent and non-suggestive of crime. Likewise, they may be loaded with suggestions and inferences of criminality. In the latter case, they may serve a double purpose. They may supply the overt act required to complete the crime of conspiracy, and they may also furnish persuasive proof of the intended commission of the crime which is the object of the alleged conspiracy. The instant case is of the latter class.

The conversations related by the prohibition agents conclusively established a conspiracy rather widespread in its scope and large in its operation. That appellant and Abe Sutton were conducting what was in reality an extensive liquor business in Chicago, under the guise and name of a poolroom, is not only clearly established by the

eavesdroppers, but this conclusion is strongly corroborated by the statements of the two truck drivers who testified to hauling large truckloads of liquor and to being paid by one of the conspirators in the presence of the other. Such evidence which established the overt act also furnished well nigh conclusive evidence of Morton's participation in the conspiracy. The receiving and giving of orders for the purchase of large quantities of liquor, paying the truck driver therefor, receiving orders for its distribution, the naming of price and arranging for delivery may all be evidence gathered at a single time, through a single conversation. Yet, it obviously supports, in fact it conclusively establishes, guilty participation in an existing unlawful enterprise, to-wit, a criminal conspiracy.

■ Objections to the reception of evidence given by the prohibition agents, who tapped the wires of appellant's place of business in order that conversations might be heard, are directed largely to the asserted inability of the agents to identify the voices of appellant and his associate, Sutton. Two of the prohibition agents stated that they "hung around" the Monte Carlo poolroom and became familiar with the voices of appellant and Sutton. When they became certain of the voices, they tapped the wires and "listened in" on the conversations. They stated they recognized the voice of appellant when he spoke and further that he came to the phone at times when he was called. Likewise, the conversations frequently began with the inquiry as to who was speaking, and the reply was "Paul Morton." The same was true as to Abe Sutton. However, two other prohibition agents stated that they did not know the voices of either. They, however, were present and listened to the conversations, and their testimony was offered and properly received in corroboration of the substance of the conversations, if not of the identity of the speaker.

Moreover, the groundwork had been laid for the admission of this testimony even though the witness could not recognize Morton's voice. The weight of such testimony was for the jury. Its admissibility presents quite a different question. Reason and authority, we think, support the position that when it appears that a certain place is being operated by an individual whose name is known and the telephone wires leading to such place are tapped so that the listeners-in hear the conversation taking place at such place of business, and it further appears that the listener hears one called for by a given name and a question then put "Are you John Smith?" and the response to it "Yes, I am John Smith," the identification is sufficient to justify the reception of the evidence. Its weight, however, is for the jury to decide.

While the authorities are not in harmony,[1] the trend of the decisions as stated in Jones' Commentaries on Evidence, § 810, is in favor of the reception of such evidence.

The conflicting decisions might be partly reconciled upon the different fact situations disclosed. In the instant case, other agents who listened in recognized the speaker's voice with which they were familiar. The testimony of the agents who did not recognize the speaker's voice was therefore admissible as corroborative of the substance of the conversations to which the other witnesses had testified. True, there was a momentary lapse in the eavesdropping, but it was hardly probable that another had succeeded appellant on the phone. Competency of testimony is not determined in all cases by rules which define with meticulous accuracy the line that separates rejected from admissible evidence. The trier of fact is seeking the truth. Evidence is receivable to establish the truth. Rules governing materiality and competency are founded on reason and experience. When the circumstances are such as to attest, with reasonable degree of assurance, the worthiness of such evidence, it is competent. Courts can never certify to the verity of the evidence received. They preliminarily pass on its admissibility and leave the jury determine its weight. Certain rules are well recognized, such as hearsay, best evidence, admissions, etc. There are, however, other rules wherein the boundary lines are lodged in a twilight zone—when the court's ruling must depend upon what Professor Wigmore aptly calls "circumstantial trustworthiness." Cub Fork

[1] Holding evidence *admissible*. Campbell v. Willis, 53 App. D. C. 296, 290 F. 271; Amer. & Brit. Mfg. Corp. v. New Idria Q. Mining Co., 293 F. 509 (C. C. A. 1); St. Paul Fire & Marine Ins. Co. v. McQuaid, 114 Miss. 430, 75 So. 255; Globe Printing Co. v. Stahl, 23 Mo. App. 451, 458; General Hosp. Society v. New Haven Rendering Co., 79 Conn. 581, 65 A. 1065, 118 Am. St. Rep. 173, 9 Ann. Cas. 168; Miller v. Leib, 109 Md. 414, 72 A. 466; In re Delinquent Real Estate Taxes, 149 Minn. 395, 183 N. W. 671; Barrett v. Magner, 105 Minn. 118, 117 N. W. 245, 127 Am. St. Rep. 531; Godair v. Ham. Nat. Bank, 225 Ill. 572, 80 N. E. 407, 116 Am. St. Rep. 172, 8 Ann. Cas. 447; In re Estate of Wood v. Tyler, 256 Ill. App. 401. Jones, Evidence, § 810; Wigmore, Commentaries on Evidence, § 2155 (b).

Holding evidence *inadmissible*. Donahue v. Reiner Co., 46 R. I. 302, 127 A. 359; Bonner Mfg. Co. v. Tannenbaum (Sup.) 169 N. Y. S. 43; Hirsch v. Sherman, 123 Misc. Rep. 419, 205 N. Y. S. 434; Barber v. City Drug Store, 173 Iowa, 651, 155 N. W. 992; Miller v. Kelly, 215 Mich. 254, 183 N. W. 717.

Coal Co. v. Fairmount Glass Co. (C. C. A.) 19 F.(2d) 273. We therefore conclude that the rule stated in Jones' Commentaries on Evidence should govern the admissibility of such evidence and leave it, when admitted, to the fact finder (jury or court) to determine its weight.

Appellant complains because not permitted to inquire of the government witnesses, the prohibition agents, whether they knew it was against the law of Illinois (chapter 134, par. 21, Cahill's Ill. Rev. Stat. 1921), to tap telephone wires that private conversations might be heard and used against the speaker. Appellant asserts, while appellee denies, error in the limitation placed on the cross-examination of the government witnesses in this respect. Neither counsel cites an authority in support of his contention, which in view of the available decisions is inexcusable.

The decisions in State v. Jenkins, 66 Mont. 359, 213 P. 590, State v. Hardung, 161 Wash. 379, 297 P. 167, and Billington v. United States, 15 F.(2d) 359 (C. C. A. 6), are illuminating. They do not deal with the identical fact situation here presented, but nevertheless they furnish support of the District Court's holding. In Jones' Commentaries on Evidence, § 2345, we find language which supports a contrary ruling.

The case of Alford v. United States, 282 U. S. 687, 51 S. Ct. 218, 219, 75 L. Ed. 624, recognizes cross-examination of a witness as a matter of right.

"Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood * * * that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment * * * and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased."

In Olmstead v. United States, 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376, the court held that evidence obtained by prosecuting officers through wire tapping was admissible. Strong and vigorous language appears in the dissenting opinion (page 484 of 277 U. S., 48 S. Ct. 575) to describe the unworthiness of wire tapping. The decision in the Olmstead Case, however, goes no further than to hold that such evidence is admissible. It does not deal with the right of the accused to cross-examine and thereby to discredit the accuser by showing he violated the law to secure the incriminating evidence.

Conceding the admissibility of such evidence does not detract from the strength of appellant's position. Prejudice and bias are qualities which the astute counsel seeks to establish through his cross-examination of the witness. One who calls himself a law-enforcement officer and yet knowingly violates a state law to secure evidence against another, surely evidences zeal. Perhaps, a jury would call it over-zeal. And bias and prejudice generally accompany the action and language of the over-zealous.

If then permissible cross-examination is in part for the purpose of discrediting the witness, or to show his bias and prejudice, that his word may be more accurately weighed, it would seem that proof that the informing witness obtained evidence of appellant's guilt through methods condemned by the Illinois statute as criminal and by members of the Supreme Court as abhorrent and unworthy, would have a tendency to discredit such witness.

Our conclusion therefore is that appellant was within his rights in cross-examining the prohibition agents on this subject.

We are, however, unable to see how he was prejudiced thereby.

The facts in support of the government's case were uncontradicted. Two of its witnesses were truck drivers who had received substantial payments from appellant for hauling truck loads of liquor from Canada and Detroit to Chicago. This testimony, neither disputed nor explained, stripped appellant of all of his presumption of innocence and left him naked and exposed, with his guilt undisputed. After this testimony was received, appellant continued the struggle, evidently on the theory that, though guilty, he was entitled under the Constitution to be legally convicted. The battle continued, not to ascertain the truth, but in the evident hope that error might be injected into the record and ultimate conviction thereby avoided. But avoidance of a conviction, upon uncontradicted evidence establishing to a certainty the guilt of the accused, should not, in a civil action, nor in a criminal prosecution, be predicated upon unessential and unimportant violations of the rules governing the contest. If such erroneous ruling substantially affects the outcome, or if there is doubt concerning its possible effect, the court should rigidly adhere to and apply the rules governing the contest. Nevertheless, the ascertainment of the truth by means of a fair trial rather than the slavish devotion to the rules of the game, is the determinative factor in ascertaining the

existence of prejudicial error in the admission or exclusion of evidence.

Moreover, in the case before us, evidence, other than that which came from the truck drivers, made for greater certainty, if that were possible, of the guilt of the accused.

Without restating all that testimony, it is sufficient to say that it overwhelmingly establishes guilty participation in the conspiracy by appellant and his coconspirators, none of whom chose to dispute a word of the damaging testimony given against them. In fact, several of the said coconspirators (though they were not included in the indictment) testified positively and damagingly against appellant.

In the face of such a situation, the error, made in limiting the cross-examination of the prohibition agents in the respect shown, was not so prejudicial as to necessitate a reversal. 28 USCA § 391. Moreover, in considering the effect of the erroneous ruling restricting the cross-examination, we have examined the bill of exceptions to ascertain how the court instructed the jury. Appellant has omitted the instructions of the court entirely. From this fact, we assume that the instructions were entirely satisfactory to him. We likewise assume that the court instructed the jury respecting the Illinois law and that the prohibition agents were presumed to know such law. If additional instructions were sought by appellant respecting this Illinois statute, presumably they were given.

Other assignments of error we have duly considered, but conclude that they need no separate treatment. They deal with an alleged variance between proof and indictment, which is not well taken, and with various alleged improper remarks of the government counsel, in none of which do we find error.

The judgment is affirmed.