BEESON v. UNITED STATES.
HARSCH v. SAME.
Nos. 6167, 6168.

Circuit Court of Appeals, Seventh Circuit.
June 15, 1937.

Robert E. Proctor, of Elkhart, Ind., for appellants.

James R. Fleming, U. S. Atty., of Fort Wayne, Ind., Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., and Alexander M. Campbell, Asst. U. S. Atty., of Fort Wayne, Ind., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

Appellants were tried and convicted on an indictment charging a conspiracy to commit various offenses proscribed by section 592, title 12 U.S.C.A., with the intent to injure and defraud the Columbia State Bank of Columbia City, Ind., and to cause and procure appellant Beeson to commit various offenses in violation of said section. One Lauritz N. Miller was charged with appellants.

Errors assigned include the refusal of the trial court to direct a verdict in favor of appellants, in the admission of evidence offered by the government, and the refusal of the court to strike out and reject certain testimony. The conspiracy is alleged to have commenced August 23, 1935, this likewise being the effective date of section 592 of title 12 (Rev.St. § 5209, as amended).

The Columbia State Bank was an insured bank within the terms of the act above referred to during the period of the conspiracy as charged, and appellant Beeson during such time was its president. Appellants and Miller were associated in the operation of the Consolidated Motors Corporation, Beeson acting as its secretary. Some time prior to the offense charged, Beeson loaned a large amount of money to Harsch, and on August 23, 1935, the latter owed the bank a total of $40,962 represented by promissory notes. On the following day this indebtedness was reduced on the books of the bank to $9,177 by discounting promissory notes bearing the signatures of Warren J. McLaughlin, Richard K. Tinker, John E. Mitchell, and Roy L. Rousch. These people, referred to as the "Lima group," resided at Lima, Ohio, where Harsch had an office, and the notes were procured at his instigation. These notes may properly be termed "accommodation notes," and all of the makers were financially worthless, which fact was known to both Beeson and Harsch. Some, if not all, of the notes were accompanied by financial statements signed in blank at the time the notes were procured, and which afterwards were filled in and placed in the bank along with the notes, apparently for the purpose of showing the notes were good, which Beeson and Harsch knew was not true. Entries of these notes were made in the discount register on August 24, 1935, by the cashier and the spurious financial statements were placed in the bank by Beeson. The ledger sheet showing Harsch's indebtedness, subsequently found in the bank, was not the original sheet made by the cashier, but was one kept in Beeson's handwriting. This disclosed Harsch's indebtedness to the bank as $9,177 when his actual indebtedness was $40,962.

On August 24 another note in the sum of $10,000, signed by B. K. Blanchett & Co., payable to the order of Harsch and indorsed by him, was discounted by the bank. This note was applied partly on the indebtedness of Harsch and partly to take up checks of the Consolidated Motors Corporation and Harsch, carried by the bank as cash items with no funds to pay them. This note was obtained from Blanchett who, known to appellants, had no property or financial responsibility, who received no consideration for the same, and with the understanding it was not to be discounted at the bank.

On August 31 another Mitchell note in the sum of $3,000 obtained under similar circumstances, was discounted by the bank in the handwriting of Beeson. It appears this amount was used to take up other checks of the Consolidated Motors Corporation which had been paid by the bank and carried as cash items. In early October, Miller, at Harsch's request, went to Beeson for the purpose of obtaining $5,000, and, at Beeson's suggestion, Miller wrote a check on the bank, where he had no funds, with Beeson's promise that the check would be held until money could be collected from the Consolidated Motors Corporation. Beeson took this check to a bank at Fort Wayne, obtained the money on the same, and it was delivered to Harsch. This transaction was not discovered by the other employees of the bank until a counter check, signed by Beeson as president of the bank and drawn on its funds in the Fort Wayne National Bank, was returned to the Columbia State Bank the first part of November. This transaction is not shown on the bank's records until October 10, and the journal for that day shows erasures and changes in Beeson's handwriting, reflecting a decrease in the Fort Wayne Bank account of $5,000 and a corresponding increase in the bank's account with the First National Bank of Chicago. This check, however, was not sent to the Chicago bank by Beeson until October 30 or 31. Beeson admitted to bank examiners that the Miller check was held for twenty days before forwarded for collection, and that he tore a sheet from the back of the remittance book and pasted it in.

On October 30, 1935, Miller gave Beeson another check for $2000, also known to be worthless, drawn on a Portland, Or., bank, which was used to take up an overdraft of Harsch's with knowledge on his part it was to be used for this purpose. Other false and fraudulent acts committed by appellants may be found in the record, but we have recited them sufficiently for the purpose of this opinion. It appears that none of the officers of the bank, except the cashier and Beeson, had knowledge of the acts above related until called to their attention by the bank examiner at some later date. The Consolidated Motors Corporation was subsequently dissolved with practically no assets. A liquidating agent was placed in charge of the bank February 18, 1936, and found in the bank the checks and notes above mentioned, none of which had any value.

That the trial court was justified in its refusal to direct a verdict we think there can be no question. It is self-evident that appellants conspired, intentionally and fraudulently, in the manner charged, to injure and defraud the bank and to finance their own interests with its funds.

■ The errors assigned on the admission of testimony concern mostly the notes and purported financial statements given by the "Lima group" for the reason that these notes and statements were dated, and in fact executed, some time prior to the date alleged in the indictment as the commencement of the conspiracy. We think there is no merit in this assignment. The notes were delivered to the bank by appellants and discounted during the alleged existence of the conspiracy, and we think it was not improper for the court to admit evidence as to the circumstances under which the notes were obtained as well as any statements or conversations by or with appellants which proved or tended to prove their knowledge and information concerning the existing situation.

In discussing a similar question this court in Jelke v. United States, 255 F. 264, on page 284, said:

"In this respect the trial judge possessed much discretion as to the period of time during which he would allow the government to produce testimony showing, or tending to show, the motive for the conspiracy, as well as the intent with which the acts were committed. Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128."

It was also said in Heike v. United States, 227 U.S. 131, on page 145, 33 S.Ct. 226, 229, 57 L.Ed. 450, Ann.Cas.1914C, 128:

"Another objection to evidence concerned the admission of testimony that the same course of conduct was going on long before the date in the indictment when it is alleged that the defendants conspired. The indictment, of course, charged a conspiracy not barred by the statute of limitations, but it was permissible to prove that the course of fraud was entered on long before and kept up. Wood v. United States, 16 Pet. 342, 360, 10 L.Ed. 987, 994; Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 76, 31 S.Ct. 502, 55 L.Ed. 619, 651, 34 L.R.A.(N.S.) 834, Ann.Cas.1912D, 734."

■ Error is also assigned as to the admission and refusal to strike other testimony of events which occurred prior to the commencement of the alleged conspiracy, but what we have said with reference to this class of testimony makes it unnecessary to pursue further such assignments. Complaint is made as to the admission of certain testimony which concerned one of the appellants, but which did not directly concern the other. This assignment, however, overlooks the well-established rule that any act or statement by one of the parties to a conspiracy in furtherance of the object of the conspiracy is admissible against all the others.

■ Another error assigned and urgently insisted upon is that the entries made upon the books of the bank were not false as the transactions entered actually took place. The entry of the notes of the "Lima group" is illustrative. It is the contention of appellants that even though these notes were worthless, known by appellants to be such, yet their entry upon the books of the bank would not be false entries within the meaning of the statute. If this were an essential element of the offenses charged, which it is not, a serious question would be presented. Appellants overlook the fact that they were tried and convicted for conspiracy and not the substantive offense. Proof of the former is sufficient irrespective of whether the latter is consummated.

In Hall v. United States (C.C.A.) 78 F. (2d) 168, it is said on page 169:

"A conspiracy and the substantive crime which is the object of the conspiracy, are different offenses. United States v. Rabinowich, 238 U.S. 78, 85, 35 S.Ct. 682, 59 L.Ed. 1211. And here the offense charged was

neither perjury nor subornation of perjury, but a conspiracy to commit those offenses. To establish the conspiracy, it was not necessary to prove that the substantive offenses had been committed. Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278. Hence it was not necessary to establish the perjury, either by the testimony of two witnesses, or by that of one witness and corroborating circumstances."

In United States v. Rabinowich, 238 U. S. 78, on page 85, 35 S.Ct. 682, 683, 59 L. Ed. 1211, it is said:

"It is apparent from a reading of § 37, Crim.Code [18 U.S.C.A. § 88] (§ 5440, Rev. Stat.), and has been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. Callan v. Wilson, 127 U.S. 540, 555, 8 S.Ct. 1301, 32 L.Ed. 223, 228; Clune v. United States, 159 U.S. 590, 595, 16 S.Ct. 125, 40 L.Ed. 269, 271; Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, 290; United States v. Stevenson [No. 2], 215 U.S. 200, 203, 30 S. Ct. 37, 54 L.Ed. 157, 158. And see Burton v. United States, 202 U.S. 344, 377, 26 S.Ct. 688, 50 L.Ed. 1057, 1069, 6 Ann.Cas. 362; Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153. The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable. Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, 290. And it is punishable as conspiracy, though the intended crime be accomplished. Heike v. United States, 227 U.S. 131, 144, 33 S.Ct. 226, 57 L.Ed. 450, 455, Ann.Cas.1914C, 128.

The judgment is affirmed.