**UNITED STATES v. BUCUR.**

No. 10436.

United States Court of Appeals
Seventh Circuit.

Jan. 15, 1952.

Rehearing Denied March 18, 1952.

Wm. S. Spangler, Fred M. Stults, Jr., Gary, Ind., for appellant.

James E. Keating, Asst. U. S. Atty., South Bend, Ind., Walter J. Keckich, Asst. U. S. Atty., Hammond, Ind., Gilmore S. Haynie, U. S. Atty., Fort Wayne, Ind., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Following a trial by jury defendant was adjudged guilty on four counts of an indictment, one of which charged him with conspiring with Minich and Honea to transport stolen motor vehicles in interstate commerce in violation of Section 371, Title 18 U.S.C., and the other three, with knowingly aiding and abetting in the sale of such vehicles so transported in violation of Section 2313, Title 18 U.S.C. Upon appeal, he asserts that the proof was insufficient to sustain the verdict and that the court erred in admitting and excluding evidence and in charging the jury.

By timely motion for acquittal, defendant challenged the sufficiency of the evidence. In our consideration of the issue thus raised, we have kept in mind the axioms that it is no part of our functions to weigh conflicting testimony, that the evidence must be viewed in the light most favorable to the government, and that, if one count of the indictment is good in law and has been sufficiently proved, if the sentences are concurrent and within the prescribed maximum set out in the statute, as here, the judgment must be sustained, Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774, unless prejudicial error was committed at trial.

On or about September 1, 1949, Richard Minich, an employee of Barnett Motors, an automobile dealer in Savannah, Georgia, learning that a certain 1949 DeSoto sedan owned by Barnett bore motor number S-13-57194 and serial number 6225372, passed this information on to Herman Honea, now deceased, who thereupon obtained Georgia license plates for the car. Minich then drove the DeSoto to a location in Savannah, where Honea having received the keys from Minich, shortly thereafter took possession and drove it away. On or about September 1, 1949 Honea placed a long-distance telephone call to defendant in Gary, Indiana. He was heard to say that he and Minich had "gone through with the deal as planned" and that he would bring a 1949 DeSoto to Gary within a short time. On September 3, 1949 Honea and defendant sold the car to Dan Oram, in Gary, who gave Honea a check for $1200 but withheld $500, the balance due, until he could be provided with a certificate of title. Honea then returned to Savannah. About September 10, 1949 defendant called Minich, telling him that he and Honea should obtain the "papers" on the car and send them to Gary; that if they did not do so at once, the purchaser would think the car was "hot." Honea replied that Bucur should not worry, as the car "would not be missed for 15 to 30 days." Shortly thereafter a certificate of registration was sent to defendant, who delivered it to Oram and received from him the final $500 due on the purchase price.

On September 17, 1949 Minich, having ascertained that a 1947 Studebaker owned by Barnett bore motor number H205321,

and serial number 4255574, handed the numbers to Honea, who proceeded to procure a Georgia registration certificate for the car. Minich then drove the car to a place in Savannah where Honea, having received the keys from Minich, picked it up. Shortly thereafter Honea took the car to Gary, where he and defendant sold it to one Christoff on September 20, 1949.

On or about October 19, 1949 defendant went to Savannah and there met Minich and Honea. The three discussed a plan whereby they would obtain another DeSoto sedan from Barnett's stock. It was proposed that defendant, using the name of "Dorman," place a $25 cash deposit with Barnett on the car, and, on the day following, tender a check for $2620, purportedly drawn by "Dorman," on a bank in Statesboro, Georgia. Defendant was told that this check would be spurious. Defendant then proceeded to Barnett's place of business and selected the DeSoto which had been discussed, placing a $25 cash deposit thereon. He then left Savannah and returned to Gary. The following day, one Phillips, otherwise unidentified in the record, tendered a check to Barnett in the sum of $2620, purportedly drawn by "Dorman," in payment of the balance due on the 1949 DeSoto, motor number S–13–72053. Honea then received the car and drove it to Gary, where, on or about October 23, 1949, while in the company of Bucur, he sold it to Christoff.[1]

On or about November 19, 1949 Minich rented a 1948 Dodge sedan, motor number D24–526042, from Hood's U-Drive-It, an automobile rental agency in Savannah. He again noted the motor number and passed it on to Honea, who subsequently acquired a registration certificate for the car. Minich then gave the keys to Honea who picked the car up at a prearranged location and drove it to Gary, where he and de-

fendant sold it to Christoff on November 21, 1949. Minich then returned the keys to Hood's and reported that the automobile had been stolen. While on a visit to Savannah in October 1949, defendant had talked to Minich about the possibility of his getting a U-Drive-It in the manner subsequently employed by Minich and Honea.

■ Defendant first contends that the evidence does not show that the cars were stolen. He relies on Hite v. United States, 10 Cir., 168 F.2d 973, taking the position that the opinion rightfully interprets "stolen" as meaning common law larceny and that, consequently, absent a trespass to possession, a conviction can not be sustained under the facts presented. However, there is no solace for defendant in the Hite case. There the defendant, by fraudulent misrepresentations, induced the owner to sell a car to him on credit; title passed. The court held merely that when title is intentionally parted with the article is not "stolen." See also, Ex parte Atkinson, D.C., 84 F.Supp. 300. Obviously, therefore, the Hite case is readily distinguishable from the instant proceeding. Here the owners, Barnett and Hood, did not part with their titles. At most, possession was in Minich as agent or bailee, with title and constructive possession remaining in the owners. Assuming, arguendo, that a trespass to possession is essential, when each of these conversions occurred, there was a trespass to the owner's constructive possession. Davilman v. United States, 6 Cir., 180 F. 2d 284; Stewart v. United States, 8 Cir., 151 F.2d 386.

■■ Defendant next asserts that there was no evidence to sustain a finding that he had knowledge that the cars were stolen. Though knowledge is an essential element of the conspiracy as well as of the sub-

1. This car was the subject of a count in the indictment charging defendant with knowingly aiding and abetting in the sale of a stolen motor vehicle which had been transported in interstate commerce. As to this count, at the close of the evidence, the trial court directed an acquittal because the car had not been "stolen" within the meaning of the statute. In so ruling the court relied on Hite v. United States, 10 Cir., 168 F.2d 973. The jury was instructed that the evidence relating to this car could not be considered as supporting an averment of a stolen vehicle, but that it could be considered with respect to the count alleging the conspiracy.

stantive crime of aiding and abetting, United States v. Gardner, 7 Cir., 171 F.2d 753, it may be inferred from circumstantial evidence. Kowalchuk v. United States, 6 Cir., 176 F.2d 873; McAdams v. United States, 8 Cir., 74 F.2d 37; Bruce v. United States, 8 Cir., 73 F.2d 972; United States v. Vigorito, 2 Cir., 67 F.2d 329; Drew v. United States, 2 Cir., 27 F.2d 715. We are of the opinion that the jury was justified in inferring knowledge on the part of defendant, in view of the following specific evidence: (1) that, following a telephone call to Minich in which defendant stated that additional papers were needed on the first 1949 DeSoto, or the purchaser would think the car was "hot," defendant continued his assistance in the sale by delivering the certificate of title and collecting the final payment on the sale price; (2) that, having been told that final payment on another DeSoto would be made with a spurious check, defendant proceeded to assist in acquisition of its possession by placing a $25 cash downpayment on it, employing a false name; (3) that he discussed the possibility of obtaining a Hood's U-Drive-It rental car in the manner subsequently employed by Minich, and (4) that, simultaneously with or shortly subsequent to these various acts and declarations, he continued to assist Honea in the sale of stolen vehicles which had been shipped in interstate commerce. Other corroborating circumstances appear in the record.

■ Finally, on the question of proof, defendant urges that there was no showing that he was a party to any conspiracy to transport stolen vehicles in interstate commerce. True, there is no proof of an express agreement among the three alleged coconspirators, but such evidence is not necessary. United States v. Gordon, 7 Cir., 138 F.2d 174. Conspiracy may be inferred from "evidence of relationships and conduct and other probative circumstances." Phelps v. United States, 8 Cir., 160 F.2d 858, 867, certiorari denied Peters v. U. S., 334 U.S. 860, 68 S.Ct. 1525, 92 L.Ed. 1780. Where the evidence shows a general plan or scheme, employed in a number of instances to bring about illegal results, upon a showing that two or more persons engaged in interrelated steps of the plan, an inference of conspiracy is justified. United States v. Gordon, supra. Here the evidence of a concerted scheme, in which Minich, Honea and Bucur each played essential, coordinated roles, was such that it required submission to the jury.

■ Defendant called as a witness one Bellanger, who, following general testimony as to the reputation of defendant, was asked what Bucur had told him about Honea after he, Bucur, had returned from Savannah. An objection was sustained upon the ground that the declarations were self-serving. Counsel then offered to prove that the witness would testify that Bucur, upon his return from Savannah, in October 1949, had warned the witness to have nothing to do with Honea as the latter was not procuring the cars he was selling in a proper manner. At a later point in the trial defendant took the stand in his own behalf. A question designed to bring out a similar fact was propounded to him and the answer was excluded on similar grounds.

This testimony may be labeled "self-serving" in the sense that it relates to the conduct and declarations of the defendant. As observed in United States v. Matot, 2 Cir., 146 F.2d 197, generally all evidence submitted for a defendant is self-serving. But the government properly asserts that, in order to escape liability, an accused, once shown to have been a member of a conspiracy, must assume the burden of proving a good faith severance from the conspiracy when he ascertains its illegal character. By his plea, defendant denied knowledge of the fact that the vehicles were stolen. Thereafter he was confronted with substantial affirmative proof to the contrary. In this situation, he had a right to attempt to meet and overcome this proof against him by evidence tending to establish his good faith. To be compelled to meet this challenge without the benefit of testimony concerning his conduct and statements, following what he contends was his initial ascertainment of the illegal scheme, seems to us manifestly wrong. If testimony of this nature is excluded by the legalistic tag of "self-serving," an anoma-

lous situation is presented where the accused is faced with the need to bolster his claim of innocence but is deprived of the most logical means of doing so.

Later in the trial the court permitted defendant to testify as to the warning he gave one Rothermel concerning the cars Honea was selling. Still later the witness Peterman was allowed to testify as to a warning given him by defendant. Thus, inferentially at least, the trial court appears to have recognized its earlier error. However, there was no advice from the court to counsel that they could, if they desired, recall Bellanger and elicit from him the desired testimony. In other words, there was no affirmative action by the court tending to cure its prior error.

The government argues that, in view of the admission of defendant's later testimony and that of the witness Peterman, the previously excluded evidence was merely cumulative; that the jury did not choose to believe defendant and Peterman and that, hence, there is no reason to assume that Bellanger's testimony would be at all beneficial. This position loses sight of the fact that, under the offer, Bellanger would have testified, not to an incident identical with that concerning which Peterman testified, but as to a separate warning given him by Bucur. To deprive defendant of the testimony of this witness was, we think, erroneous, and, in the light of the conflicting testimony, substantially prejudicial to his cause. This alone warrants reversal and remand for a new trial.

▮▮▮ Defendant also contends that the court erroneously allowed Minich to testify as to various acts and declarations of himself or of Honea out of the presence of defendant. It is axiomatic that the acts or declarations of one coconspirator, made in furtherance of the conspiracy and before its termination, are binding upon, and may be proved against, all coconspirators, even though some of the various acts and declarations occur out of the presence of certain of the latter. Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Beeson v. United States, 7 Cir., 90 F.2d 720; Allen v. United States, 7 Cir., 4 F.2d 688; Wigmore on Evidence,

Sections 1077, 1079. If the acts or declarations have occurred, in point of time, during the pendency of the conspiracy, and if, on their face, they appear to have been made in furtherance of the conspiracy, they are generally admissible. It is of no consequence that the individual was not a member of the conspiracy until after the acts were committed or the declarations made, for all who subsequently join a conspiracy are held accountable for, and adopt as their own, all prior conduct of their coconspirators. United States v. Manton, 2 Cir., 107 F.2d 834.

Bearing in mind these principles, we think the challenged testimony was properly admitted. Two examples will suffice. Minich testified that, on or about September 1, 1949, he ascertained the motor and serial numbers of a DeSoto and gave them to Honea. This was objected to as being an act out of the presence of defendant, and prior to any showing that he was then a member of the conspiracy. Coincidentally, this particular act happens to be the first of the overt acts alleged in support of the conspiracy. Applying the test of Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, it appears that the requirements for admissibility were met. Reference to the act itself shows that it was of such nature as to further the design of the conspirators. The fact that it is insisted that defendant was not shown to have joined the conspiracy until a subsequent time did not render it inadmissible against him for, as stated above, upon joining the conspiracy, he became responsible for all prior activities of his coconspirators.

The result is the same as to the testimony of Minich wherein he recounted a conversation with Honea, upon the latter's return to Savannah in late November, 1949, wherein Honea told him, Minich, that he had received $650 for the 1948 Dodge and had given defendant his share of the proceeds. At another point Minich, testifying regarding a Dodge (the 1948 Dodge stolen from Hood's U-Drive-It), said that Honea had told him that he, Honea, had advised Bucur that "they" had gone through "with the deal we had talked about when.

Mr. Bucur was previously here in Savannah"; that Honea said he had called Bucur and had told him that "we had gotten a 1948 Dodge, and that he (Honea), was leaving with it the following day."

All this was objected to as hearsay declarations made out of the presence of defendant. Although this testimony is hearsay on its face, in that it includes extra-judicial statements by Honea, it was admissible, for the declarations of one co-conspirator are deemed to have been made by all. Krulewitch v. United States, supra, Allen v. United States, 7 Cir., 4 F.2d 688. Thus, while it was Honea who made the declarations concerning a transaction with defendant, they are binding on defendant as a coconspirator. Wigmore on Evidence, Sec. 1077. Independent evidence, such as to require submission to the jury, that defendant had become associated with the conspiracy no later than September 3, 1949 appears in the record, including the testimony of the witness Oram, that defendant had assisted Honea in the sale of the first DeSoto and other corroborating circumstances in the record.

Two other instances in the course of Minich's testimony perhaps merit some further comment. On each of the two occasions Minich testified as to telephone conversations which the decedent, Honea, allegedly had with defendant. At one point he testified that between September 10 and 15, 1949, at Honea's home, he talked by telephone to Bucur, whose voice he recognized; that Bucur told him that Honea should get the "papers" on the DeSoto which the latter had taken to Indiana mailed back to Bucur so that the latter could collect the $500 still due on the car and that if Honea didn't do this "pretty soon," the purchaser would wonder if it was not "a hot car." He testified further that Honea then took the telephone and told Bucur not to worry about any investigation about the car, because it "hasn't even been missed" and "probably wouldn't be for fifteen or thirty days." Defense counsel objected that the witness should not be permitted to testify as to what Honea said, as there was no proof that the party at the other end of the line continued to be Bucur. The trial court overruled the objection, stating that all this was a matter of weight for the jury.

In the other instance, Minich testified that he was present when a telephone call was made on or about September 1, 1949, from Honea to Bucur; that Honea put in the call for Bucur; that he, the witness, did not hear the party at the other end, but that Honea called him "Johnny." Argument was then heard on an objection that there was not sufficient identification of the person to whom Honea spoke. The court ruled that it was a matter of circumstantial evidence, i. e., the identity of the party at the other end of the line; that such was a question of weight for the jury to consider. The witness was then allowed to testify that he overheard Honea say that they were going ahead with the deal as planned.

All this testimony we think involves merely the declarations of an alleged co-conspirator out of the immediate presence of the defendant. However, in view of defendant's contentions, we have considered the question of identity of the person with whom Honea purported to speak. Indeed, if there were no question of identity, as we have pointed out, these were declarations of a coconspirator. Furthermore, obviously, all objections would fall for, while defendant was not physically present when the declarations were made, if in fact, he was the recipient of Honea's statements by means of telephonic connection, then equally obviously, he was present during their utterance.

Though, during the early history of the telephone, courts were prone to demand that an individual first be able to recognize the voice of the party with whom he allegedly conversed before he could testify as to conversations and declarations of the other person, with the passage of time and increased familiarity with and use of the telephone, such a strict test fell into disfavor. Jones, Commentaries on Evidence, Secs. 807–810; Wigmore on Evidence, Sec. 2155. But even with the trend toward liberality in authentication, the courts quite generally still demand a reasonable degree of identification

before such conversations can be admitted. Morton v. United States, 7 Cir., 60 F.2d 696. When substantial evidence of authentication is present, it becomes a question of fact as to whether the conversation was had with the alleged other party. This evidence may, of course, be circumstantial. 105 A.L.R. 326. Furthermore, the same rules of authentication appear to be applicable in the case of a bystander testifying as to the declarations of one party to a telephone conversation, i. e., if there is evidence that a conversation was in fact had between two designated persons, a bystander may testify as to the declarations he has overheard. Takahashi v. Hecht Co., 62 App.D.C. 72, 64 F.2d 710; Wigmore on Evidence, Sec. 669. But the bare representation by one party to the conversation that he has conversed with another is insufficient proof of authentication, for the reason that the identity of the second person, absent some additional proof, is presumed to be based on the statement of the second party to the call that he is in fact a particular individual. This, of course, is hearsay. 105 A.L.R. 326.

 In the light of these rules it appears that these two conversations testified to by the witness, were supported by sufficient circumstantial evidence to justify submission to the jury to decide whether defendant was in fact the other conversant; furthermore they were admissible as the declarations of a coconspirator.

During cross examination of defendant, the government asked him: "Have you ever been convicted of an offense?" Defendant answered: "Yes." No further questions were propounded, and counsel for defendant did not attempt to clarify the situation. Timely objection was interposed on the grounds that the conviction was too remote in point of time to be relevant to defendant's character or veracity and that the conviction, having been for a misdemeanor, was not admissible to impeach the witness. For the first time, defendant now asserts a further ground for excluding the question, namely, that, having occurred in a Juvenile Court in the City of Chicago, under both Illinois and Indiana statutes, the conviction is not admissible

for the purposes of impeachment. Ill.Rev. Stat.1949, C. 23, Sec. 190; Burns Ind.Stat. Sec. 9–3215, 1942 Replacement, 1951 Supp.

The circumstances surrounding the conviction are most meager. The only information concerning it is that contained in the argument of counsel on the motion, from which it appears that sometime during 1932 or 1933 defendant was arrested in the company of others his age, i. e., 17 or 18 years, in wrongful possession of an automobile. Defendant was tried in "Judge Desort's court" in the City of Chicago and sentenced to seven months in the House of Correction. The trial court questioned defendant at some length concerning the circumstances surrounding the matter and apparently concluded that the prior offense was of such a nature that it would shed light on defendant's credibility as a witness.

 Questioning of this nature is, to a great extent, limited only by the sound discretion of the trial court, Lovely v. United States, 4 Cir., 175 F.2d 312, 314, certiorari denied, 338 U.S. 834, 70 S.Ct. 38, 94 L.Ed. 508, and, absent a showing of abuse of discretion, we may not disturb the ruling. Though some courts have held that extreme remoteness in point of time renders questioning of this nature improper, Burt v. United States, 5 Cir., 139 F.2d 73, certiorari denied 321 U.S. 799, 64 S. Ct. 936, 88 L.Ed. 1073, it appears that the rule in this circuit is based on the inquiry: does "the conviction inquired about * * * reasonably tend to prove a lack of character with respect to * * * credibility as a witness." United States v. Waldon, 7 Cir., 114 F.2d 982, 985, certiorari denied 312 U.S. 681, 61 S.Ct. 549, 85 L.Ed. 1119. Therefore, if it appears that the trial court, having considered all aspects of the questioned conviction, concludes that it reasonably bears upon the credibility of the witness, such questioning is proper. While felonies are not punishable by incarceration in the House of Correction in Illinois, Ill.Rev.Stat. C. 38, Secs. 585, 586, it does not appear that the questioned offense was that type of misdemeanor normally excluded as frivolous. Thus, defendant's objection based on this ground,

and apparently abandoned on appeal, is without merit.

 Defendant's new assertion, that the prior conviction, having occurred in a Juvenile Court, is inadmissible to impeach him, is of questionable merit. While it is true that both Illinois and Indiana have placed such a provision in their statutes, those rules are not binding on federal courts. United States v. Waldon, supra. Furthermore, it does not appear from the record that the conviction did in fact occur in a Juvenile Court. If, on remand, such fact is established the result would again rest with the discretion of the trial court.

Defendant assigns as further error the trial court's admission of the testimony of various ultimate purchasers of the several stolen automobiles. Witnesses Vinovich, Overbach, Mitchell and Pollen were permitted to testify that they had purchased automobiles from Oram or Christoff and that these cars were subsequently taken from them as stolen vehicles. Witness Gard was permitted to testify that his employer had financed the purchase of a 1947 Studebaker from Christoff for one William Sims; that his employer subsequently repossessed the car; and that, subsequent to such repossession, the car was taken by the Gary police. Defendant asserts that this testimony was inadmissible because defendant has not been shown to have been connected with or interested in the sales of the cars by Oram or Christoff, and that, as these witnesses were all respected residents of the area, their testimony could be nothing other than prejudicial to defendant's cause.

Though transactions with which the accused has no interest or connection are generally inadmissible in a criminal proceeding, United States v. Sprengel, 3 Cir., 103 F.2d 876, this rule is modified to permit proof of formal essentials of the crime charged. Thus, in the instant case, by a plea of not guilty, defendant placed all averments of fact in issue. By this testimony the government sought to establish the identity of the stolen vehicles and show that they had moved in interstate commerce, i. e., that automobiles which orig-

inated in Savannah, Georgia, were subsequently found in the possession of the witnesses in Gary, Indiana. Therefore, though the presence of the witnesses may have been injurious to defendant's position from an emotional standpoint, the testimony, being material, was admissible.

Finally, defendant insists that the trial court erred in its charge to the jury. It is contended that the court misstated the law in a number of respects, but, reading the charge as a whole, we think that it properly advised the jury as to the law. United States v. Kaadt, 7 Cir., 171 F.2d 600. Defendant aslo argues that the trial court erred in refusing to instruct the jury as to the weight to be assigned to accomplice testimony. Although such an instruction is the "better practice," it is not error to refuse to give it. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Wallace v. United States, 7 Cir., 243 F. 300. This is particularly true in the light of the fact that the jury was clearly advised that the witness Minich was in fact one of the alleged coconspirators. Thus, it was proper for the court to allow the jury to draw its own conclusions as to the weight to be assigned to his testimony.

In view of the foregoing, the judgment is reversed and the cause remanded with instructions to grant a new trial.