**NATIONAL LABOR RELATIONS BOARD**
v.
**CARPET, LINOLEUM AND RESILIENT TILE LAYERS LOCAL UNION NO. 419.**

**No. 4744.**

United States Court of Appeals Tenth Circuit.

May 21, 1954.

Harry Irwig, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Frederick U. Reel, and James A. Ryan, Washington, D. C., were with him on the brief), for petitioner.

Philip Hornbein, Jr., Denver, Colo. (Philip Hornbein and Roy O. Goldin, Denver, Colo., were with him on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This proceeding is here on petition to enforce an order of the National Labor Relations Board requiring Carpet, Linoleum, and Resilient Tile Layers, Local Union No. 419, affiliated with Brotherhood of Painters, Decorators, and Paper Hangers of America, American Federation of Labor, hereinafter referred to as the Union, to cease and desist from causing or attempting to cause Lauren Burt, Inc., of Colorado, to discharge William F. Coopersmith because he was not a member in good standing of the Union, in violation of Section 8(a)(3) of the Labor Management Relations Act, 61 Stat. 136, 29 U.S.C.A. § 141 et seq.; to cease and desist from restraining or coercing Coopersmith in the exercise of the right guaranteed by section 7 of the Act, except to the extent that such right may be affected by a valid agreement; to notify Lauren Burt, Inc., and Coopersmith, that it had no objection to the former employing the latter; to make Coopersmith whole for any loss of pay he may have suffered as the result of the discrimination against him; to post notices; to mail a copy of such notices to the Regional Director of the Board; and to notify such Regional Director of the steps taken to comply with the order.

Enforcement of the order of the Board is resisted on the ground that the

Board was without jurisdiction of the proceeding because the alleged unfair labor practice did not affect commerce within the meaning of section 10(a) of the Act, supra. By way of amplification of the contention, it is argued that at the time of the alleged unfair labor practice Coopersmith was not an employee of Lauren Burt, Inc., hereinafter referred to as the Burt Company; that the work which Coopersmith was doing at the time of the alleged unfair labor practice was being done for Earl A. Dixon, Inc., hereinafter referred to as the Dixon Company; that the Dixon Company was not engaged in commerce within the intent and meaning of the Act; and that therefore the unfair labor practice charged in the complaint did not affect commerce. Evidence was adduced at the hearing before the trial examiner which tended to establish these facts. The Burt Company was engaged at Denver, Colorado, in the building material specialties and floor covering business. And due to the volume of its purchases of materials and sales of products outside of Colorado, it was engaged in commerce, within the intent and meaning of the Act. Lauren Burt, president of the Burt Company, owned a retail floor covering business in Denver. For several years, Earl A. Dixon had been employed as manager or superintendent of the floor covering division of the Burt Company. Burt sold the retail floor covering business to Dixon. For some time after the sale, operation of the retail floor covering business was continued under the trade name of Lauren Burt. Later, it was incorporated under the name of Earl A. Dixon, Inc. That corporation was not engaged in commerce. The contract under which Dixon purchased the retail floor covering business provided among other things that Dixon would oversee the completion of certain contracts which the Burt Company then had, valued at $200,000. While such contracts were being completed, Dixon remained an employee of the Burt Company and divided his time between the business of that company and that of the retail business purchased from Burt. In his capacity as superintendent of the Burt Company, Samuel A. Kaufmann hired employees, assigned employees to jobs, discharged employees, and inspected jobs. He did not hire employees for the Dixon Company. But at the request of Dixon, Kaufmann from time to time, assigned persons in the employ of the Burt Company to work on jobs of the Dixon Company. The Dixon Company paid such persons for work done on its jobs, and usually when they finished working on jobs for it they returned to work for the Burt Company.

For some time, the Burt Company and the Union were parties to collective bargaining contracts. Later, the two conducted collective bargaining negotiations for wages and also for car allowances. By letter, the Union kept the Burt Company advised of wage rates for floor covering mechanics and the Burt Company put such rates into effect. The Burt Company secured its floor covering mechanics through the Union and employed only mechanics who were members of the Union. The Dixon Company had no collective bargaining contract with the Union but it did adhere to the same labor policy followed by the Burt Company. For more than two years prior to the date of the alleged unfair labor practice, Coopersmith was an employee of the Burt Company and worked with the usual regularity. He became involved in a controversy respecting a certain policy or certain policies of the Union and was directed by George Cooney, business agent for the Union, to appear at a meeting and apologize. Coopersmith appeared, difficulties ensued, and he was physically ejected from the meeting. At the time of these difficulties, Coopersmith was working pursuant to assignment by Kaufmann on a job for the Dixon Company. In the belief that because of the difficulties he would not be permitted to work, Coopersmith did not report for work on the two days immediately following such difficulties; and he did not again do any work for the Burt Company. About four

days after the difficulties, he reported at the office of the Burt Company and was assigned by Kaufmann to a job of the Dixon Company; and he then worked on jobs of that company for approximately ten days. On the day in question, he was working on a job almost across the street from the office of the Union. During the morning of that day, Kaufmann received a telephone call from Cooney; and talking on the telephone, Cooney told Kaufmann that Coopersmith was in bad standing with the Union and was supposed to come down and answer charges. Kaufmann went immediately to the place where Coopersmith was working and told him of the telephone message. Kaufmann further told Coopersmith that he could finish out the day but that he would be moved immediately to another job. And he was moved. Coopersmith did no subsequent work for the Dixon Company. On different occasions, he went to the office of the Burt Company and sought work but none was given him. While on the day of the alleged unfair labor practice Coopersmith was working on a job of the Dixon Company, he was a regular employee of the Burt Company. He had been employed by that company for a long time on a day to day basis when work was available. When he and other employees of that company were assigned to jobs of the Dixon Company and finished their work on such jobs, they returned to the Burt Company and resumed their regular work for it when work was available. We are of the view that in a sense, Coopersmith was on loan to the Dixon Company. And it is a fair inference that except for the statements which were made to Kaufmann on the telephone, he would have returned to work for the Burt Company at the conclusion of the work then being done for the Dixon Company. Since the Burt Company was engaged in commerce, within the intent and meaning of the Act, the Board had jurisdiction to entertain the proceeding and determine whether the act of the agent for the Union in making the statements to Kaufmann on the telephone constituted an unfair labor practice for which appropriate redress should be granted under the terms of the Act.

Enforcement of the order of the Board is resisted on the further ground that testimony was improperly admitted concerning the telephone conversation to which reference has been made. Kaufmann testified to the substance of the conversation, including statements made by Cooney. It is urged that the identity of Cooney as one of the parties to the conversation was not established, and that in the absence of such identity there was no showing that any representative of the Union participated in the conversation. Where a face to face conversation between a witness and another person would be admissible in evidence, a like conversation between such persons over the telephone is admissible, provided the identity of the person with whom the witness spoke is satisfactorily established. Andrews v. United States, 10 Cir., 78 F.2d 274, 105 A.L.R. 322. And when substantial evidence of authentication is present, identity becomes a question of fact for the court, jury, or board, as the case may be. United States v. Bucur, 7 Cir., 194 F.2d 297.

Kaufmann testified that he had been a member of the Union; that he was then presently a member of it on a withdrawal basis, meaning that he was still a member in good standing but since his job was supervising he was not allowed to work with tools; that he knew Cooney; that on a number of occasions he had talked with Cooney face to face; that he had talked with Cooney on the telephone several times prior to the crucial conversation; that in his best judgment the person with whom he had the telephone conversation in question was Cooney; and that he based such belief on the voice. That was sufficient identity of Cooney as a participant in the conversation to render competent the testimony of the witness in respect to the conversation, including the detailing of the statements made by Cooney. United States v. Easterday, 2 Cir., 57

F.2d 165, certiorari denied, 286 U.S. 564, 52 S.Ct. 646, 76 L.Ed. 1297; United States v. Bucur, supra.

■■ The order is challenged on the further ground that prejudicial error was committed by the trial examiner in admitting and considering the testimony of Coopersmith respecting certain statements made to him by Dixon. Coopersmith testified that Dixon said Coopersmith knew Kaufmann received a call from Cooney to take Coopersmith off the job, and that under the circumstances Dixon could not put Coopersmith to work. It is argued that the testimony was secondary hearsay. But it is unnecessary to explore that question. In the findings made by the trial examiner and later adopted by the Board, no reference was made to such testimony, and there is nothing in the record which indicates that it was taken into consideration in the making of the findings. The rule is well established that where a cause was tried before the court without a jury, it will be presumed on appeal that testimony improperly admitted was disregarded. In other words, it will be presumed on appeal that the court considered only competent evidence and disregarded that which was incompetent. Jonah v. Armstrong, 10 Cir., 52 F.2d 343; Elliott v. Gordon, 10 Cir., 70 F.2d 9; Wall v. United States, 10 Cir., 97 F.2d 672, certiorari denied, 305 U.S. 632, 59 S.Ct. 104, 83 L.Ed. 405; Hedrick v. Perry, 10 Cir., 102 F.2d 802. And that salutary rule has appropriate application in a proceeding before the National Labor Relations Board.

■ Finally, the Union seeks to obviate enforcement of the order of the Board on the ground that the decision is not supported by substantial evidence on the record, considered as a whole. As an administrative agency clothed with power after hearing to determine whether violations of the commands of the Act have occurred, the Board may appraise the credibility of witnesses, weigh testimony, draw reasonable inferences within the limits of the inquiry from the proven facts, and determine the ultimate facts. And while it is the province and duty of this court on review to determine the substantiality of the evidence supporting a decision of the Board, ordinarily a finding will not be disturbed if it is supported by substantial evidence and is not plainly erroneous. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. No good purpose would be served by reviewing in detail the testimony given by the several witnesses, respectively. It is enough to say that a careful examination of the record leads to the conclusion that the findings of the Board are adequately sustained by substantial evidence and that they are not clearly erroneous.

The order of the Board will be enforced.