**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Fred WASHINGTON, Defendant-
Appellant.**

**No. 12185.**

United States Court of Appeals
Seventh Circuit.

April 17, 1958.

Duffy, Chief Judge, dissented.

Daniel D. Glasser, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Harry D. Strouse, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

This appeal is from a conviction on a two count indictment charging narcotic law violations of Title 26 U.S.C.A. § 4704(a) and Title 21 U.S.C.A. § 174, respectively. Trial was to the court.

The District Court found both defendants, Leon and Fred Washington, guilty as charged. Leon Washington is now serving his sentence. Fred Washington has appealed.

The uncontroverted facts are that in the early evening of June 17, 1956 Theodore Heisig, George Mattera, George Emerick and Jack E. Love, Federal Narcotics Agents, were in the apartment of a Mrs. Kernick at 4615½ South Drexel Boulevard in Chicago; that at the suggestion of Agent Heisig she called the apartment of Fred Washington at 4627 South Drexel Boulevard in Chicago by dialing KE 6–6460, the unlisted telephone of Della Washington, the wife of Fred Washington; that she told the agents that the person who answered was Fred Washington; that she asked him if he could send her "a couple" (meaning heroin) and he said he could and it would take about an hour.

After Mrs. Kernick had told the agents she was talking with Fred Washington

and while the telephone conversation was still in progress Agents Love and Emerick left the Kernick apartment. They went to their automobile, which was parked on South Drexel Boulevard headed south behind Fred Washington's automobile, and placed the apartment of Fred Washington under surveillance. Approximately 5 to 15 minutes later they saw Fred Washington, whom they had known for several years, and another man, whom they testified was Fred's brother Leon, leave the Washington apartment and get into Fred Washington's automobile and drive away. Love and Emerick followed them. About an hour after the telephone conversation, Leon Washington came to the Kernick apartment with 483.5 grains of heroin. He was then and there arrested. Agent Heisig reported this to Love and Emerick, who then located and arrested Fred Washington.

The errors relied upon for reversal by the defendant-appellant Fred Washington arise out of the refusal of the District Court to exclude the evidence of the telephone conversation, insufficiency of the evidence, and alleged deprivation of defendant's constitutional rights in arresting him without probable cause and the introduction in evidence of the telephone conversation.

■ Mrs. Kernick called Fred Washington by telephone at Heisig's suggestion. She dialed KE 6–6460, which was the unlisted telephone number of the apartment where Fred Washington lived. When the telephone was answered Kernick told the agents she was then talking with Fred Washington. Heisig and Mattera listened to the entire conversation and testified that the voice of the person with whom Kernick talked was that of Fred Washington. This foundation having been laid, the telephone conversation was clearly competent. United States v. White, 7 Cir., 1956, 228 F.2d 832, 835; United States v. Carr, 7 Cir., 1955, 219 F.2d 876, 878–879; United States v. Bucur, 7 Cir., 1952, 194 F.2d 297, 303–304; Fabacher v. United States, 5 Cir.,

1936, 84 F.2d 602, 604; Morton v. United States, 7 Cir., 1932, 60 F.2d 696, 698.

The defendant-appellant predicates his claim of insufficiency of the evidence on the sole premise that his conviction "rests on an alleged conversation between one of the witnesses in the case and the defendant." Defense counsel has conceded in oral argument before this court that if Fred Washington was the person with whom Mrs. Kernick talked on the telephone he is guilty.

The evidence as to whether Fred Washington was that person is in conflict. Heisig testified that he was. The parties stipulated that Mattera would testify to the same facts as Heisig. Accordingly two witnesses, Heisig and Mattera, identified the voice of the man with whom Kernick had the telephone conversation as that of Fred Washington. Fred Washington testified that it was not he. Leon Washington testified that it was he who had talked with Kernick. At the request of the government, Kernick was called as a court's witness. She testified that it was not Fred Washington with whom she talked though, at one point in her testimony, she testified that she was not positive that it was not his voice that she heard.

The defendant-appellant argues that it would have been impossible for Heisig and Mattera, in the position occupied by them, to identify the voice as that of Fred Washington in view of the short duration of the conversation and the fact that they had never heard his voice before and were able to make such identification only after they talked with him the following morning. However, the trial court heard the testimony and observed the witnesses as they testified. It believed the witnesses Heisig and Mattera as against the defendants and the witness Kernick.

■■ In determining if there is sufficient evidence to support a conviction, it is not the role of an appellate court to weigh conflicting testimony. The weight to be given and the credibility to be attached to the testimony of the witnesses

is a matter for determination by the trier of the facts. United States v. Cook, 7 Cir., 1950, 184 F.2d 642, 644; United States v. Detente, 7 Cir., 1952, 199 F. 2d 286, 288; United States v. White, 7 Cir., 1956, 228 F.2d 832, 833; United States v. Green, 7 Cir., 1957, 246 F.2d 155, 158.

The undisputed evidence is that Kernick dialed the unlisted telephone in the Fred Washington apartment. When a man answered Kernick was asked by one of the agents "[i]s this Fred?". She answered "yes" and the telephone conversation continued. Just as soon as Kernick said it was Fred Washington with whom she was talking Love and Emerick left the Kernick apartment and took up surveillance of the Fred Washington apartment which was two or three doors to the south. In about 5 to 15 minutes Fred Washington came out of his apartment. With those undisputed facts in evidence before the trial court we cannot say that it erred in believing Heisig and Mattera over the defendants and Kernick.

■ The trial judge could well believe from the evidence that Fred Washington was the person with whom Mrs. Kernick talked and, therefore, with the concession that Fred Washington is guilty if the proof established he was that person, the evidence is sufficient to sustain the finding of the District Court that Fred Washington was guilty beyond a reasonable doubt.

■■ The contention of the defendant-appellant Fred Washington that he was arrested without probable cause and thereby deprived of his constitutional rights is without merit. The uncontroverted facts pertaining to the occurrences on the evening of June 17, 1956 within the knowledge of the arresting officers were sufficient in themselves to warrant a man of reasonable caution to believe that a felony had been committed by Fred Washington. They had "a reasonable ground for belief of his guilt" and had probable cause sufficient to make the arrest. Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879.

Moreover, subsequent to his arrest the Grand Jury investigated and returned the indictment in the case at bar. He was arrested on a bench warrant issued on the return of the indictment and released on bond conditioned on his appearance for trial on the offenses charged.

It is well settled law that one may be arrested "by persons without any warrant, or without any previous complaint, and brought before a proper officer, and this may be in some sense said to be 'without due process of law.' But it would hardly be claimed, that after the case had been investigated and the defendant held by the proper authorities to answer for the crime, he could plead that he was first arrested 'without due process of law.'" Ker v. Illinois, 1886, 119 U.S. 436, 440, 7 S.Ct. 225, 227, 30 L.Ed. 421.

Accordingly he can not be heard to complain as to his first arrest. However, we have held that there was probable cause for his arrest on June 17, 1956 and he was not, therefore, deprived of his constitutional rights.

The judgment is affirmed.

DUFFY, Chief Judge (dissenting).

I respectfully dissent. I am inclined to believe that the natural abhorrence that all good citizens must feel toward those engaged in the illicit narcotic business, has caused the majority of this panel to reach an erroneous conclusion.

No matter how vile or disgusting the charged criminal offense may be, the defendant thus charged still must be convicted by evidence that is convincing beyond a reasonable doubt. The burden upon the Government is unchanged. In my judgment, in the case at bar, the Government has failed to meet the obligation which rested upon it.

No narcotics were found in the possession of defendant, Fred Washington. He had no previous record of violation of the narcotics laws. The conviction of Fred Washington must stand or fall upon his identification by the sound of his voice. Neither agent ever had heard his voice before, yet, after his arrest on the fol-

lowing day, these agents claimed that the voice they then heard was the same voice they had heard the day before over the telephone.

In the opinion herein, the majority sets forth what it calls "uncontroverted facts," but Mrs. Kernick testified she did not speak to Fred Washington on the phone. Further, Leon Washington, a brother of Fred, testified that he was the one who answered the phone and, of course, it was he who delivered the narcotics. We held in United States v. Bucur, 7 Cir., 194 F.2d 297, 304, that the representation of one party to a telephone conversation that he conversed with another was, in itself, an insufficient proof of authentication.

I concede that ordinarily, where the evidence is conflicting, we must accept that which is most favorable to the Government, and I also recognize the rule that the trier of the facts is the sole judge of the credibility of witnesses. However, there are rare occasions when the physical facts of a situation are such as to make the oral testimony utterly unbelievable.

The agents "suggested" to Mrs. Kernick that she call a certain telephone number and ask for Fred Washington. She did call the number. Apparently she talked in the usual manner with the telephone receiver at her ear. The conversation consisted of not more than thirty-five words, which ordinarily would consume about twelve seconds of time. It is the unbelievable testimony of the agents that as Mrs. Kernick was telephoning, each agent got his head close enough to Mrs. Kernick's head so that he not only heard the voice on the other end, but heard it clearly and distinctly enough so that on the following day he was able to recognize the voice he had heard on the telephone as belonging to Fred Washington.

To me such an alleged performance was impossible. Maybe a two-faced Janus who was a contortionist, might have manipulated one of his right ears and one of his left ears so that both of the ears were touching a telephone receiver already occupied by the ear of a third person, but I doubt it. In the case at bar, we have the picture of not one but two agents getting close enough to a telephone receiver already at the ear of Mrs. Kernick, so that they not only heard a voice they never had heard before, but were able to take note of the quality and the sound of the same, and readily identify that voice the following day.

After the telephone call, and before seeing Fred Washington, agent Heisig ordered that Fred Washington be arrested. Heisig testified "I ordered the arrest, but I was not certain that the defendant was the same person to whom the phone call was directed."

Disregarding, as we should, the identification of defendant, Fred Washington, by his voice, there is no competent or substantial evidence in this record to sustain the verdict of guilty. See Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173.