**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alonzo F. JOHNSON, Defendant-**
**Appellant.**

**No. 15421.**

United States Court of Appeals
Seventh Circuit.

July 7, 1966.

Rehearing Denied Aug. 1, 1966.

William C. Erbecker, Indianapolis, Ind., Alonzo Johnson, for appellant.

Richard P. Stein, David W. Mernitz, Indianapolis, Ind., James Manahan, Asst. U. S. Atty., Southern District of Indiana, Indianapolis, Ind., for appellee.

Before KNOCH and SWYGERT, Circuit Judges, and BEAMER, District Judge.

KNOCH, Circuit Judge.

The defendant-appellant, Alonzo F. Johnson, was indicted in two counts charging violation of the narcotic laws (Count I—26 U.S.C. § 4704; Count II—21 U.S.C. § 174). After denial of his motion to suppress certain evidence, the defendant waived trial by jury. He was convicted in a bench trial and sentenced to serve two years on Count I and five years on Count II, to run concurrently.

It is the defendant's contention that the evidence introduced by the government was illegally obtained and should have been suppressed.

The facts show that the defendant was known to Sergeant Owen, a member of the narcotics squad of the Indianapolis, Indiana, Police Department. Sergeant Owen had both seen and spoken with the defendant. Sergeants Jones and Ward, members of the same squad, had seen the defendant, but had never spoken to him. A fourth member of the squad, Sergeant Keithley had seen a photograph of the defendant.

In December, 1964, various members of the Indianapolis Police Department heard from a number of drug addicts that the defendant was selling heroin in the area although none of these informants claimed to have dealt with the defendant. Defendant was placed under surveillance.

Charles Wallace had served the department as an informer for many years during which his information had always proved to be reliable. Information was received by the department that Charles Wallace was buying heroin from the defendant and selling it on defendant's behalf.

About 10 o'clock in the morning of January 21, 1965, the four above-named officers visited Charles Wallace who admitted that their information was correct. He had no heroin in his possession at the time, but stated that he was about to secure a supply by calling the defendant. Sergeant Owen watched Wallace dial a telephone number. He later checked that number and found it was unlisted, was assigned to a fictitious name for a telephone located in an unoccupied room which was rented to an anonymous tenant.

Wallace held the receiver of the telephone so that he and Sergeant Owen could both listen. Sergeant Owen testified that he heard a male voice answer and say "This is Alonzo." Wallace and the man arranged to meet at a tavern (situated at 30th and Kenwood Streets) about six miles away, at 11 o'clock that same morning for delivery of a supply of heroin. This allowed the police officers about 45 minutes to make their plans.

There was testimony from which a reasonable inference could be drawn that securing a search warrant at this time would take an estimated two hours. The four officers had only one automobile with them. All four officers would be needed for the "stakeout" at the vicinity of the tavern as the direction from which the defendant would come was unknown. It was essential to surprise him to avoid successful flight or destruction of the heroin he had promised to bring.

The four officers and Wallace drove to the tavern location and posted themselves in strategic places. It was then about 10:40 a. m.

At 11 a. m., a white 1963 Cadillac automobile approached. Wallace said to Sergeant Jones, who had seen the defendant on a prior occasion, "There's Alonzo, that white Cadillac getting ready

to turn." Wallace and Sergeant Jones were on the second floor of the fire station at one corner of the intersection of 30th and Kenwood Streets. Sergeant Jones called to Sergeant Ward who was immediately below him on the first floor of the fire station and signalled through the window to Sergeant Keithley who was posted in a dry cleaning establishment across the street. Sergeants Keithley and Ward approached the defendant who had parked his automobile and was walking across the street toward the tavern. When asked, the defendant told the officers that he was "Richard Johnson." Sergeant Ward then said "All right, Alonzo, you are under arrest for violation of the 1935 narcotic act." The defendant did not deny that he was "Alonzo." Sergeant Ward then searched the defendant and found a glass vial of capsules containing white powder which the defendant at first said were for his cold. He later said they were heroin and that there were twenty-five of them. A field test showed a positive result.

■ Although the defendant was on foot when apprehended, he had an automobile ready for his use and could easily have removed himself and the evidence from the vicinity had his suspicions been aroused. The problem was analogous to that presented in search of an automobile for which a warrant is seldom required. Flores v. United States, 5 Cir., 1956, 234 F.2d 604, 605; Carroll v. United States, 1925, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543.

It seems to us that the circumstances here present a stronger case than those in Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. There the police officer was merely told by a reliable informant that one Draper, whom he did not know, was returning by train with a supply of heroin. The informant supplied a description of Draper. Here Sergeant Owen had heard the appointment made for the delivery of the heroin. Three of the officers had personally seen the defendant before and the fourth had viewed a photograph of him.

The officer in *Draper* apprehended and searched Draper and found the expected narcotics just as in the case before us. The search was held to be reasonable.

■ We believe that the defendant's reliance on some of the wording in *Draper* to the effect that the search was incident to a lawful arrest is misplaced. There, as here, if, in fact, no narcotics had been found on the suspect, he would not have been formally booked. The search here was a reasonable one.

We have carefully considered all other cases cited by the defendant in support of a contrary conclusion, but find them either distinguished by their facts or incorrectly applied, in our opinion, to the circumstances of this case.

In this Court for the first time, the defendant attacks Sergeant Owen's credibility. Sergeant Owen considered himself capable of identifying the defendant's voice when he heard it over the telephone on the morning of January 21st, 1965, although he had not heard that voice for several years. The defendant points to Judge Duffy's comments in United States v. Washington, 7 Cir., 1958, 253 F.2d 913. Judge Duffy found it incredible that two agents who heard a voice for the first time over the telephone with their heads pressed together at a receiver held by a third person, could later identify that voice on hearing it in direct conversation for the first time the next day. The voice identification in *Washington* was the sole link to the defendant. The promised delivery of narcotics in *Washington* was made by another man. That is not our case.

The judgment of the District Court must be affirmed. The defendant's motion to be transferred to the County Jail on the ground that he had not elected to start serving his sentence pending appeal is denied as moot.

The Court is grateful to Mr. William C. Erbecker of the Indiana bar, who faithfully represented the defendant-appellant with skill and ingenuity as Court-appointed counsel.

Affirmed.